Jane DOE I, et al., Appellants,

v.

Thomas PHILLIPS, et
al., Respondents.

No. SC 86573.

Supreme Court of Missouri,
En Banc.

June 30, 2006.

Arthur A. Benson, II, Jamie K. Lansford, Kansas City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael Pritchett, Asst. Atty. Gen., Jefferson City, Lisa Noel Gentleman, Office of the County Counselor, Kansas City, for respondents.

LAURA DENVIR STITH, Judge.

Appellants are a group of Missouri residents. None of them have been adjudicated to be a sexually violent predator (SVP), but respondents allege all nonetheless are required to register as sex offenders because each has previously been convicted of or pled guilty to crimes that make them subject to the registration provisions of sections 589.400 to 589.425.[1] The registration requirements, popularly known as "Megan's Law," require affected persons to register with designated authorities at various intervals and to notify authorities when they change their residence. They also permit publication of affected persons' names, addresses, photographs and prior triggering offenses.

Appellants filed suit in Jackson County against selected law enforcement officials

---

**1.** All statutory citations are to RSMo Supp. 2005, unless otherwise indicated.

attempting to prevent further enforcement of the sexual offender registry statutes through declaratory and injunctive relief. To protect their privacy, appellants have sued as Jane Does I–III and John Does I–VIII and are hereafter referred to as "the Does." They alleged that, while it may be proper to apply the registration and notification requirements to SVPs and other violent sexual offenders, it is unconstitutional to apply it to relatively minor offenders such as themselves. They appeal the judgment denying their claims.

During the pendency of this appeal, Missouri's Megan's Law was modified. H.B. 1698, 93rd Gen. Assem., 2nd Reg. Sess. (Mo.2006). The amended law expands restrictions on SVPs, adds additional crimes to its coverage, and excludes or allows petitions for removal from the registry for various non-violent offenses, including offenses of which some of the Does pleaded or were found guilty, effectively mooting those particular claims.

This Court rejects the other Does' arguments that Missouri's Megan's Law violates their due process and equal protection rights under the Missouri Constitution. This Court further rejects their arguments that the law violates Missouri's constitutional prohibitions of *ex post facto* laws, bills of attainder, and special laws.

The only respect in which this Court finds merit to the Does' challenge to Missouri's Megan's Law is an extremely narrow one. The Does are correct that the portions of the law imposing an affirmative duty to register based solely on pleas or convictions for conduct committed prior to enactment of Megan's Law on January 1, 1995, some eleven and one-half years ago, violates Missouri's constitutional prohibition of laws "retrospective in ... operation." To this extent, *and only to this extent*, Megan's Law's registration re-

quirements may not be enforced as to this small group of persons.

This invalidation is very limited in nature. SVPs are still fully required to register and comply with all aspects of Megan's Law because their obligations are based on findings that they are SVPs and not merely on pre-Megan's Law criminal conduct. Persons who pled or were found guilty after January 1, 1995, or who committed additional crimes subject to Megan's Law after that date, are fully subject to Megan's Law's relevant requirements. Further, even as to those Does who may not be required to fulfill the affirmative duties imposed directly on them by Megan's Law, Missouri's constitutional prohibition on laws retrospective in their operation does not prohibit others from publishing information about them in the manner permitted by Megan's Law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Does' Constitutional Allegations.

The Does are a group of eleven offenders who pled or were found guilty of a wide variety of crimes that are sexual in nature or involve abuse of children, as discussed in more detail in section III.D. None of them have been adjudicated to be SVPs.

The Does bring their claims under the Missouri Constitution, which they argue offers broader protections from sex offender registration requirements than does the United States Constitution. They assert that Megan's Law constitutes an *ex post facto* law or one retrospective in its operation, both of which are separately prohibited by article I, section 13, of the Missouri Constitution, which states "no *ex post facto* law, nor law impairing the obligation of

contracts, or retrospective in its operation ... can be enacted."

The Does also argue Megan's Law violates their substantive due process liberty right to privacy and avoidance of stigma, as well as what they call their liberty interest in exercising personal choice and freedom once they have completed their sentences, probation or parole. Alternatively, they argue that the law's restrictions and requirements violate their rights under Missouri's equal protection clause because they apply indiscriminately both to those convicted of serious or violent sexual crimes and to those who pled guilty to minor crimes to avoid the embarrassment of a trial and received only a suspended imposition of sentence (SIS), without proof of future dangerousness. Finally, they argue it is an unconstitutional special law or a bill of attainder.

The case was submitted based on a stipulation of the parties supplemented by other testimony and evidence provided to the court during the litigation process. The trial court entered judgment against the Does on all claims. They appeal directly to this Court because they challenge the validity of a Missouri statute. Mo. Const. art. V, sec. 3.

### B. Federal Registration Requirements.

The federal sex offender registration act (SORA)[2] requires that states, to continue to receive certain federal funding, must pass laws requiring a person to register if convicted of "*a criminal offense against a victim who is a minor*" or a sexually violent offense, unless at the time of the crime the person was under 19 and the

conduct was criminal due only to the victim's age. 42 U.S.C.A. sec. 14071(a)(1)(A), (a)(3)(A) (2005) (emphasis added). SORA narrowly defines the phrase "a criminal offense against a victim who is a minor" as only those state crimes that are comparable to or exceed the range of offenses that violate SORA. Id. at (a)(3)(A). It only applies to persons who have convictions. A person with multiple or aggravated offense convictions, or who is an SVP, must register for life; other offenders must register for 10 years. Id. at (a)(1), (b)(6). States were required to enact registration statutes within 3 years. Id. at (g).

### C. Missouri's Megan's Law prior to June 2006.

Missouri first enacted its version of Megan's Law in 1994, effective January 1, 1995. 1994 Mo. Laws 1131; Secs. 566.600 to 566.625, RSMo 1994. Megan's Law imposes registration and notification requirements on persons committing crimes listed in chapter 566, certain other sexual crimes, and certain crimes that are not inherently sexual in nature but the legislature believes to be associated with a risk of sexual offenses against minors, such as child kidnapping. Secs. 589.400 to 589.425.

■ The purpose of Missouri's Megan's Law, and of similar acts in other states, is to "protect children from violence at the hands of sex offenders," *J.S. v. Beaird,* 28 S.W.3d 875, 876 (Mo. banc 2000), and to respond to the known danger of recidivism among sex offenders. *Connecticut Dept. of Pub. Safety v. Doe,* 538 U.S. 1, 4, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003); *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140,

---

**2.** The federal law is formally entitled the Jacob Wetterling Crimes Against Children & Sexually Violent Offender Registration Program, title 17, 108 Stat. 2038 (codified as amended at 42 U.S.C.A., sec. 14071 (2005)), but has become popularly known as "Megan's

Law" in recognition of Megan Kanka, who was killed by a sexual predator, *Smith v. Doe,* 538 U.S. 84, 89, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), and is also referred to by the acronym "SORA."

155 L.Ed.2d 164 (2003). *Cf.* sec. 43.540, RSMo Supp. (1989) (implementing procedures for youth service agencies to conduct criminal background checks of persons working in direct contact with minors).

Prior to 2006, Missouri's law went beyond federal registration requirements by requiring registration not just by persons who committed crimes in the range of those listed in the federal SORA,[3] but also by persons convicted of crimes such as parental kidnapping or child abuse and by those who were not convicted but pled guilty and received an SIS. *Compare* sec. 589.400.1(1), *with* 42 U.S.C.A. sec. 14071(a)(1), (3).

Each person subject to Missouri's law had to register with the "chief law enforcement official of the county in which such person resides," sec. 589.400.2, and update that registration at least yearly. Sec. 589.414.6. Predatory or persistent sexual offenders, those who failed to register or filed false information, and offenders whose triggering crime involved a minor were required to report *in person* every 90 days, for life, "unless all offenses requiring registration [were] reversed, vacated or set aside" or the offender was pardoned. Secs. 589.400.3, 589.414.5.

***D. Missouri's 2006 Revisions to Megan's Law.***

H.B. 1698, signed into law June 5, 2006, significantly modifies Megan's Law. H.B. 1698, 93rd Gen. Assem., 2nd Reg. Sess. (Mo.2006).[4] It adds additional sexual offenses involving children and other potentially vulnerable persons, and requires offenders to report twice rather than once a year and to provide an updated photograph yearly. Sec. 589.414.6, H.B. 1698.[5]

But, the 2006 revisions remove registration requirements for persons whose convictions were for: (1) kidnapping or felonious restraint by a child's parent or guardian or (2) non-sexual child abuse under section 568.060. Sec. 589.400.6, H.B. 1698. These offenses have never required registration under the acts of most other states.

The 2006 revisions also significantly modify the length of time for which registration is required. Those who have committed the most serious offenses or who are repeat offenders must continue to register for life. But, other registrants who demonstrate they do not present a threat to public safety may petition the courts for "removal of his or her name from the sexual offender registry after ten years have passed from the date he or she was required to register" if the offense is: (1) promoting prostitution in the second de-

---

**3.** Section 589.400.1(1) provided that crimes that "triggered" the statutory duty to register and notify covered felony offenses listed in chapter 566, including forcible rape, sec. 566.030, RSMo 2000, forcible sodomy, sec. 566.060, RSMo 2000, sexual assault and deviate sexual assault, secs. 566.040, 566.070, RSMo 2000, sexual abuse, sec. 566.100, RSMo 2000, whatever the age of the victim, and other crimes listed in chapter 566 if the victim was a minor. Section 589.400.1(2) specifically enumerated additional crimes not listed in chapter 566, including kidnapping, felonious restraint, promoting prostitution, promoting or possessing child pornography, sexually exploiting a minor, promoting or providing pornography to minors, promoting

obscenity or coercing acceptance of obscene material, publicly displaying sexually explicit material, promoting sexual performance of a child or using a child in sexual performance, incest or abuse of a child, *when committed or attempted against a minor.*

**4.** H.B. 1698's sections are denominated by section number followed by "H.B. 1698."

**5.** The added offenses include child sexual trafficking, sexual contact or intercourse with a resident of a nursing home, female genital mutilation and endangering the welfare of a child where the endangerment is sexual in nature. Sec. 589.400.1, H.B. 1698.

gree or third degree; (2) public display of explicit sexual material; and (3) statutory rape in the second degree, if the crimes did not involve physical force or the threat of force. Sec. 589.400.7, H.B. 1698. And, if an offender was 19 or younger and the victim was 13 or older, the offender may petition for removal from the registry two years from the date he or she was required to register. Secs. 589.400.8, H.B. 1698.

## II. STANDARD OF REVIEW

Construction of a statute is a question of law, which this Court reviews *de novo.* A "statute is presumed to be valid and will not be declared unconstitutional unless it clearly contravenes some constitutional provision." *Doe v. Roman Catholic Diocese of Jefferson City,* 862 S.W.2d 338, 340 (Mo. banc 1993). Further, "it should be obvious that a statute cannot supercede a constitutional provision," *id.* at 341, and "[n]either the language of the statute nor judicial interpretation thereof can abrogate a constitutional right." *State v. Bolin,* 643 S.W.2d 806, 810 (Mo. banc 1983). *See also State ex rel. Liberty Sch. Dist. v. Holden,* 121 S.W.3d 232, 234 n. 6 (Mo. banc 2003).

## III. ANALYSIS OF CONSTITUTIONAL CLAIMS

### A. The Ex Post Facto, Equal Protection and Due Process Clauses of the Missouri and the United States Constitution are Co–Extensive.

The Does assert that enforcement of Megan's Law should be enjoined under Missouri's Constitution even if that law does not violate comparable provisions of the United States equal protection, due process or *ex post facto* clauses. While "provisions of our state constitution may be construed to provide more expansive protections than comparable federal constitutional provisions," *State v. Rushing,* 935 S.W.2d 30, 34 (Mo. banc 1996), analysis of a section of the federal constitution is "strongly persuasive in construing the like section of our state constitution." Id. (declining to expand art. I, sec. 15, "beyond that provided by the Fourth Amendment").[6]

This Court rejects the Does' invitation to interpret the Missouri due process, equal protection or *ex post facto* clauses more broadly than comparable federal constitutional provisions here. The Does have identified no reason grounded either in the language of Missouri's 1945 Constitution or the history of its enactment to believe that its framers intended these clauses to be interpreted more broadly than the nearly identical provisions in the United States Constitution. This Court will interpret these phrases consistently with their interpretation under federal law.

But, as discussed in section III.F., because no provision of the federal constitution is comparable to Missouri's ban on laws retrospective in their operation, Mo. Const. art I, sec. 13, federal decisions provide no guide to this Court's interpretation of that clause.

### B. Missouri's Megan's Law Does Not Violate Missouri's Ex Post Facto or Procedural Due Process Clauses.

The Does acknowledge that the United States Supreme Court has upheld Alaska's version of Megan's Law in the face of a claim that it violates the bar on *ex post facto* laws in the United States Con-

---

6. Other cases utilizing federal law as the basis for analysis of equivalent Missouri constitutional provisions include *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 829 (Mo. banc 1991) (equal protection); *Bolin,* 643 S.W.2d at 811 n. 5 (Sixth Amendment); *State v. Owens,* 302 Mo. 348, 259 S.W. 100, 106 (1924) (Fourth Amendment).

stitution. *Smith*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164. That Court also has rejected a claim that Connecticut's Megan's Law violates affected persons' procedural due process rights by making them subject to the act's notification and registration requirements without a hearing to determine their future dangerousness. *Connecticut*, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98.

This Court similarly has rejected an *ex post facto* challenge to Missouri's notification and registration requirements by a person who pled guilty in return for an SIS, because Missouri's *ex post facto* clause applies only to criminal laws and "the thrust of the registration and notification requirements are civil and regulatory in nature." *In re R.W.*, 168 S.W.3d 65, 70 (Mo. banc 2005). *R.W.* further held that since future dangerousness is irrelevant under Megan's Law, *procedural* due process principles do not require a hearing to determine whether a particular offender is likely to be dangerous. Id. at 71–72. This Court reaffirms *R.W.'s* rejection of these challenges to Megan's Law.

### C. Missouri's Megan's Law Does Not Violate Substantive Due Process.

■ In holding that *procedural* due process principles do not require a hearing on an offender's future dangerousness, the United States Supreme Court specifically cautioned, "Because the question is not properly before us, we express no opinion as to whether Connecticut's Megan's Law violates principles of substantive due process." *Connecticut*, 538 U.S. at 8, 123 S.Ct. 1160. The Does now make the arguments expressly not addressed in *Connecticut*: they ask this Court to find that Megan's Law impairs a liberty interest in violation of substantive due process. Mo. Const. art. I, sec. 2.

■ Substantive due process principles require invalidation of a substantive rule of law if it impinges on liberty interests that "are so fundamental that a State may not interfere with them, even with adequate procedural due process, unless the infringement is 'narrowly tailored to serve a compelling state interest.' " *Doe v. Miller*, 405 F.3d 700, 709 (8th Cir.2005), *quoting, Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); U.S. Const. amend. XIV. In such cases, the laws are invalid "regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

■ "[S]ubstantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). "The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field. It is important, therefore, to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake...." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

■ "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Id. To be considered a "fundamental" right protected by substantive due process, a right or liberty must be one that is "objectively, deeply rooted in the nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *State ex rel. Nixon v. Powell*, 167 S.W.3d 702, 705 (Mo. banc 2005). For this reason, the "asserted

fundamental liberty interest" must be carefully described. Id.

 Further, if a particular constitutional amendment provides specific protection for the right asserted, such as First Amendment free speech rights, the alleged violation will be analyzed under that amendment rather than under the more amorphous concepts of substantive due process. *County of Sacramento v. Lewis,* 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Claimed violations of a right to personal privacy, to procreate, and similar rights not specifically set out in the constitution but inherent in the concept of ordered liberty are analyzed under substantive due process principles. *See Wash. v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (generally applied to "matters relating to marriage, family, procreation, and the right to bodily integrity").

**1. *Right to Exercise Personal Choice and Freedom.***

Here, the Does allege Megan's Law impinges on what they call their fundamental right to exercise personal choice and freedom. They also argue that it violates their right to privacy and freedom from unwanted publicity. In support, they make the broad assertion that Megan's Law deprives them of "a previously enjoyed right to be free of registration and identification once their sentence, parole, or probation is completed."

Basically, their argument is that once they served their sentences and any period of probation or parole, they received an unconditional release and gained a vested interest in "exercising personal choice and freedom" of conduct that is inconsistent with the registration and publication burdens imposed on them by Megan's Law.

Nothing in Missouri law or in substantive due process principles supports the Does' assertions. The cases cited involve physical imprisonment or other restriction of the person. *See United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (person held without bail). Missouri's registration and notification requirements are not comparable. *Compare In re Norton,* 123 S.W.3d 170, 173 (Mo. banc 2003) (civil commitment of SVP impinges on fundamental right of liberty, as it involves physical restraint). More relevant are cases upholding the right of legislatures to impose continuing civil disabilities on felons even after they have completed their terms, such as restrictions on voting or certain employment, out of a concern for public safety. These are permissible restrictions of a person's personal choices and freedoms.[7]

In rejecting a similar argument that Iowa's Megan's Law violated affected persons' rights to "personal choice regarding family" by restricting their right to live near family if the latter lived near a school, and their rights to travel to live in such areas, the Eighth Circuit noted the law did

---

7. *State v. Martinelli,* 972 S.W.2d 424, 432–33 (Mo.App. E.D.1998) (failure of juror to reveal prior felony convictions required reversal for new trial); *Chandler v. Allen,* 108 S.W.3d 756, 760–62 (Mo.App. W.D.2003) (convicted sex offender with history of force against female strangers validly barred from working in state building). *See also* sec. 561.026, RSMo 2000 (convicted felons may not serve as jurors, may be kept from voting); sec. 561.016, RSMo

2000 (offenders routinely required to disclose pleas of guilt on job applications and may be restricted from entering certain types of employment). *Cf. United C.O.D. v. State,* 150 S.W.3d 311, 313–14 (Mo. banc 2004) (Missouri's Constitution differs from United States Constitution in that it specifies only limits on legislature's powers to regulate, rather than granting such regulatory power specifically).

not directly restrict the right of a person to live with family members. *Miller*, 405 F.3d at 710–11. It directly restricted only their right to live near a school. To hold as fundamental any incidental effect of a law on family would extend substantive due process far beyond its intended reach. *Miller* refused to do so.[8]

As in *Miller*, this Court finds that to accept the Does' arguments would extend substantive due process principles into the type of unchartered area where the United States Supreme Court has cautioned courts not to tread. *Collins*, 503 U.S. at 125, 112 S.Ct. 1061. The Does have not identified a fundamental right to be free from all governmental regulation and have failed to provide a rationale for extending such a right.

### 2. *Right to Privacy and Freedom from Stigma.*

■ The Does also claim the provisions violate their fundamental rights to privacy and to be free from the stigma associated with registration and notification under Megan's Law.[9] The Does again fail to carefully describe exactly how Megan's Law impinges on their rights to privacy or how it causes an impermissible stigma, however-er.

It is undeniable that the law requires that the Does provide, and allows authorities to publish, various types of information. The information available to the public under Megan's Law prior to the 2006 revisions included a registered person's name, address, photograph and the crime the person committed. Sec. 589.402.3. But, the Does admit such information is already in the public domain.[10] Moreover, the stigma that the Does allege results from their listing on the registry comes not from the fact they are listed, but from their convictions of the offenses that led to their listing. "Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from . . . registration and dissemination provisions, but from the fact of conviction, already a matter of public record." *Smith*, 538 U.S. at 101, 123 S.Ct. 1140. *See R.W.*, 168 S.W.3d at 70 ("[a]ny restrictions on housing and employment are collateral consequences of the underlying sex offense, not the registration requirement").

■ Because the Does have failed to show how Megan's Law impinges on any fundamental liberty right, it will withstand

---

**8.** For similar reasons the Eighth Circuit rejected appellants' right to travel claim. Id. at 712–13. The Does also assert in a few sentences that Megan's Law infringes on their right to travel, but because they fail to set out the issue in their Points Relied On or cite authority supporting invalidation of Missouri's law on this basis, this Court will not address the issue further.

**9.** The right to privacy is fundamental. *Lawrence v. Texas*, 539 U.S. 558, 562, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).

**10.** *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) ("even the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public rec-

ord"); *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (no "substantive privacy" decision supports claim that "State may not publicize a record of an official act such as an arrest"). The 2006 revisions permit internet publication of more detailed information about such matters as known aliases, date of birth, residence, work, school and temporary addresses, vehicle descriptions, and date and nature of underlying offense and of release. Sec. 589.402.3, H.B. 1698. Much of this additional information clearly is also not otherwise confidential. Whether the same can be said of all new information now permitted to be published is not addressed in the record or the briefs and, so, is not addressed by this opinion.

substantive due process scrutiny if "rationally related to a legitimate state interest." *In re Marriage of Woodson,* 92 S.W.3d 780, 784 (Mo. banc 2003). Under that test, it will be upheld "'if any state of facts reasonably may be conceived to justify it.'" *Mahoney v. Doerhoff Surgical Servs.,* 807 S.W.2d 503, 512 (Mo. banc 1991), *quoting, McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

Missouri has a legitimate interest in disseminating public information in the interest of safety and law enforcement efforts. *Smith,* 538 U.S. at 99, 101, 123 S.Ct. 1140 ("purpose and the principal effect of notification are to inform the public for its own safety"; "[t]he State makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant"). The safety of children is a legitimate state interest, *Miller,* 405 F.3d at 714, and the purpose of Megan's Law is to "protect children from violence at the hands of sex offenders." *Beaird,* 28 S.W.3d at 876. Megan's Law bears a rational relation to this legitimate state interest and is not violative of substantive due process principles.

### D. Missouri's Megan's Law Does Not Violate Equal Protection Principles.

The Does alternatively argue Megan's Law violates the equal protection clause of Missouri's Constitution, which states, "all persons are created equal and are entitled to equal rights and opportunity under the law." Mo. Const. art. I, sec. 2. Simply put, this constitutional protection, like that in the Fourteenth Amendment, U.S. Const. amend. XIV, requires that laws "operate[ ] on all alike" and "not subject the individual to an arbitrary exercise of the powers of government." *Kansas City v. Webb,* 484 S.W.2d 817, 823 (Mo.

banc 1972). *See also Creason v. City of Wash.,* 435 F.3d 820, 823 (8th Cir.2006) (government is to "treat all similarly situated people alike").

Equal protection analysis thus focuses on classifications of persons or groups. But, "equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). For this reason, not all distinctions in treatment of individuals or groups are invalid. A law may properly treat different groups differently, but it may not treat similarly situated persons differently unless such differentiation is adequately justified. *Creason,* 435 F.3d at 823 n. 3.

What constitutes adequate justification for treating groups differently depends on the nature of the distinction made. If the law "disadvantages a suspect class" or affects a "fundamental right," a court must apply strict scrutiny to determine "whether the statute is necessary to accomplish a compelling state interest," *Woodson,* 92 S.W.3d at 784, and whether the chosen method is narrowly tailored to accomplish that purpose. *Norton,* 123 S.W.3d at 173. The Does do not claim they constitute a suspect class. They allege Megan's Law affects their fundamental rights to liberty and privacy, but this Court has rejected those arguments in its substantive due process analysis. Because the Does identify no other fundamental right allegedly infringed, their equal protection claims are properly analyzed under a rational basis test, under which the statute will be upheld "so long as it bears a rational relation to some legitimate end." *Romer,* 517 U.S. at 631, 116 S.Ct. 1620.

Megan's Law as a whole is rationally related to the purpose of protecting children from sexual offenders for the reasons discussed above. But, the Does argue, it violates equal protection by classifying all persons convicted of sexual offenses or offenses against minors the same, making each subject to identical or nearly identical registration requirements regardless of the nature of their crimes. They argue it makes no sense to do so while not requiring registration by non-sexual violent offenders who, they assert, may be equally or more likely to present a present or future danger to others.[11]

And, they argue, even were it proper to distinguish between violent sexual crimes and other violent crimes, it is not logical to categorize non-violent offenses with violent sex-crimes and make each subject to nearly the same registration requirements. In particular, the Does suggest, distinctions should be drawn between those who received severe sentences for serious sexual crimes and those who had sex with a willing underage partner or who allegedly pled guilty mainly to avoid embarrassment for their families in return for a promise of an SIS, without realizing that future laws would require lifetime registration as a collateral consequence of their pleas.

The Does offer valid policy reasons why a legislative body might choose to exclude various crimes that Missouri has made subject to Megan's Law and why it might be more effective to draw further distinctions between gradations of offenses. As they point out, to the extent that any sex crime qualifies a person for indiscriminate listing in the registry, it may dilute the effectiveness of the registry as a means of isolating those presenting the most serious risks of re-offense.

 But, these are issues for the legislature, not this Court. The mere fact the Does are able to identify a criterion— degree of future dangerousness—that would distinguish them as more minor sex offenders from some other persons subject to Megan's Law is not determinative of the law's constitutionality. Myriad factors can be examined in classifying persons, and those who are similar in one regard may differ in another. A state may chose to differentiate in its treatment of its citizens based on any one or more such factors of its choosing, for "[t]he equal protection clause does not deny the state the power to make classifications, as long as its classifications do not establish invidious discrimination or attack a fundamental interest." *Elliott v. Carnahan*, 916 S.W.2d 239, 242 (Mo.App. W.D.1995). "A statutory classification does not offend the Fourteenth Amendment unless it rests on grounds 'wholly irrelevant' to the achievement of the state's objective." *Spudich v. Smarr*, 931 F.2d 1278, 1281 (8th Cir.1991).

Missouri, like other states, has chosen to classify those who will be subject to registration based on whether they committed a crime that Missouri classifies as a sex crime or a crime against children. It does so in an effort to "protect children from violence at the hands of sex offenders." *Beaird*, 28 S.W.3d at 876.

Certain of the Does have been convicted of crimes, such as child abuse, that do not inherently have a sexual component, while the crimes of others appear to have been sexual acts committed when both participants were minors, made criminal only due

---

11. Respondents counter that the United States Supreme Court has already rejected future dangerousness as a basis for challenging sex offender registration statutes. But, it did so under *procedural due process*. Con-

*necticut*, 538 U.S. at 7–8, 123 S.Ct. 1160. At least one justice left open the question whether the lack of an opportunity for relief would support an equal protection claim. Id. at 9– 10, 123 S.Ct. 1160 (Souter, J., concurring).

to the age of one of the participants. It is concededly more difficult to fit these crimes within the umbrella of the state's offered rationale for the registry of protecting children from future sex crimes insofar as the state conceded it made no specific showing that this subgroup of persons are likely to re-offend.

But, this Court need not determine whether Megan's Law as enacted prior to 2006 reached too far by including such persons within its grasp. The act has been substantially modified to draw the very kinds of distinctions the Does allege should be drawn. Secs. 589.400 to 589.425, H.B. 1698. Three of the Does appear to have a claim for removal from the registry on this basis.

▇▇▇ Jane Doe III says she pled guilty in Texas to injury of a child in 1998, receiving a suspended sentence and 10 years probation. Until the 2006 revisions, her crime required registration in Missouri. Similarly, John Doe VII pled guilty to child abuse charges he alleges resulted from claims of abusive spanking leveled in the course of a "bitterly contested" divorce in 1993. Child abuse that is not of a sexual nature is no longer a registerable offense under the 2006 act. Sec. 589.400.6, H.B. 1698. Finally, John Doe I pled guilty to sexual assault charges in 1988 at age 17 for what the record describes as "inappropriately" touching a 15–year old who was his then girlfriend. He received a suspended execution of sentence and successfully completed his probation in 1992. As it is more than 2 years since his conviction, the 2006 revisions allow him to petition to have his name removed from the registry by showing he does not present a present or future risk to society. Secs. 589.400.8, 589.400.9, H.B. 1698. These Does' claims

that the pre–2006 act violated their rights therefore appear to be moot.

▇▇▇ The 2006 revisions do not on their face appear to address the claims of the other Does. For instance, the revised act continues to apply to persons who pled guilty and received an SIS such as Jane Does I and II and John Doe VIII. Specifically, the record shows Jane Doe I had sex with a 15–year old boy she thought was 18. If she had been 19 or younger at the time of the crime, the 2006 act would allow her to petition for release from registration, sec. 589.400.8, H.B. 1698, but she was 20. Very little detail is given in the record about Jane Doe II's plea to sexual assault in 1991, but nothing indicates that she was a minor or that the 2006 act is not fully applicable. John Doe VIII pled guilty to sodomy for "inappropriately touching" his 8–year old stepdaughter, but denies he committed the act underlying the charge.

These Does' claims that application of Megan's Law deprives them of equal protection are not moot. They argue that their crimes by their nature do not increase the risk of future dangerousness and so do not present a basis for registration in the absence of a particularized showing of present or future risk. But, this Court rejected a nearly identical argument in *R.W.*, 168 S.W.3d 65. As *R.W.* noted, there is no constitutional bar to hinging registration on the sexual nature of the crime a person committed rather than on the type of sentence the person received for that crime. While these Does may in some cases present a lesser risk of future dangerousness, they have, nonetheless, pled or been found guilty of previous crimes that are sexual in nature or that involve violence against children.[12] The

12. While some of the Does now claim that they did not actually do the acts underlying

their guilty pleas and pled guilty only due to bad legal advice, a defendant must admit to

legislature has chosen to make such pleas or convictions the basis for registration. Indeed, nearly all states base registration on commission of such crimes, and the federal SORA requires such registries.

While the Does believe a better method of identifying those who should register could be devised, the choice of classification based on prior crimes is not "wholly irrelevant," and Missouri's Megan's Law does not establish "invidious discrimination" or make the method chosen by the legislature inherently impermissible.[13]

The 2006 revisions do not appear to affect the remaining Does either. John Doe II pled guilty to enticement of a minor in Kansas and received probation. The record does not reveal further detail about the enticement or any reason he would not be subject to the act. John Does III and V pled guilty to sodomy and sexual assault or abuse against a minor. John Doe VI pled guilty to sodomy charges. John Doe IV entered an *Alford* plea to sexual abuse charges stemming from accusations by his stepdaughter that he had molested her.[14] No principle of equal protection makes it improper to apply all the act's relevant requirements to them.

### E. Missouri's Megan's Law Does Not Impermissibly Create a Bill of Attainder or Special Law.

#### 1. Bill of Attainder.

 Article I, section 30, of the Missouri Constitution, like the corresponding provision in the United States Constitution, art. I, sec. 10, bars bills of attainder

as "a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature," *State ex rel. Bunker Res. Recycling & Reclamation, Inc. v. Mehan,* 782 S.W.2d 381, 386 (Mo. banc 1990), *quoting, United States v. Brown,* 381 U.S. 437, 442, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965), by prohibiting the legislature from inflicting punishment on a particular person or group through legislative action, without trial or judicial action. Id. *See also King v. Swenson,* 423 S.W.2d 699 (Mo. banc 1968), *overruled in part on other grounds, State v. Baker,* 524 S.W.2d 122, 131 (Mo. banc 1975). A law violates the constitutional ban if it imposes a punishment on an affected class whose membership "is determined entirely on past conduct and no method of escaping the class is provided." *Bunker,* 782 S.W.2d at 387. There is a specificity element and a punishment element. Id. at 386.

 As discussed earlier in rejecting the Does' *ex post facto* challenge, Megan's Law does not impose a punishment on the group. Non-punitive legislation, even that singling out and burdening an individual or group, is not a prohibited bill of attainder. *Selective Serv. Sys. v. Minn. Pub. Interest Research Group,* 468 U.S. 841, 846–49, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). Thus, while the Does are correct that the need to comply with Megan's Law is determined entirely by their past conduct in breaking certain laws and for many no method of escaping the class is provided, Megan's Law is not a bill of attainder.

#### 2. Special Law.

---

the elements of a crime even in the case of an SIS. Rule 24.02(e) (prohibiting entry of a judgment on a guilty plea unless the court "determines that there is a factual basis for the plea"). This Court cannot find a statute invalid based on a claim the defendant lied.

**13.** Indeed, it is the claimed unfairness of the *retrospective* imposition of such registration

requirements on these allegedly minor offenders that is the principle thrust of the Does' arguments. Those assertions are more properly addressed under Missouri's bar on laws retrospective in operation in section III.F.

**14.** *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

The Does also claim that Megan's Law violates the provision of Missouri's Constitution prohibiting the legislature from passing "any local or special law ... where a general law can be made applicable." Mo. Const. art. III, sec. 40(30). The Does claim the statute is a special law because it does not treat all similarly situated people alike in that it excludes some violent offenders who may present as great a risk of recidivism as do the Does and its purpose of protecting children from harm could be accomplished through other, more generally applicable laws.

Laws that apply to less than all persons who are similarly situated are prohibited unless the members of a given class of such persons are treated alike and the classification is reasonable. *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 832 (Mo. banc 1991). Whether a law meets this standard is determined in relation to the objects it *excludes* rather than to what it *includes*. *Batek v. Curators of Univ. of Mo.*, 920 S.W.2d 895, 899 (Mo. banc 1996). In cases alleging that persons who should be in the class have been excluded, "the test for 'special legislation' ... involves the same principles and considerations that are involved in determining whether the statute violates equal protection in a situation where neither a fundamental right nor a suspect class is involved, *i.e.*, where a rational basis test applies." *Blaske*, 821 S.W.2d at 832.

Here, Megan's Law's distinction between sex offenders as defined therein and those whose crimes did not involve such elements is rational given the higher risk of recidivism of such individuals and given the nature of the crimes involved.

The Does also claim that the fact that Megan's Law does not apply to other violent offenders means it is not "open-ended" in its application, and non-open-ended laws are special laws. While the Does are correct that classifications based on historical facts, geography, or other "immutable characteristics" are "facially special laws," *Harris v. Missouri Gaming Comm'n*, 869 S.W.2d 58, 65 (Mo. banc 1994), Megan's Law is not based on immutable characteristics fixed at the time of its passage. It applies to all persons who violate the criminal statutes listed in it. The fact it does not apply to all criminals convicted of other crimes does not make it not open-ended.[15] It will apply to such persons if they violate a listed crime. Megan's Law is not a special law.

### F. Missouri's Megan's Law is Retrospective In Its Operation as to Persons Convicted or Pleading Guilty Prior to Its Passage.

In the same sentence that bars *ex post facto* laws, Missouri's Constitution provides, "*that no ... law ... retrospective in its operation ... can be enacted.*" Mo. Const. art I, sec. 13. This provision has no analogue in the United States Constitution and is contained in the constitutions of only a handful of other states.[16] The Does argue it precludes application of

---

15. Even special laws will be upheld if substantial justification is shown for different treatment. *O'Reilly v. City of Hazelwood*, 850 S.W.2d 96, 99 (Mo. banc 1993). Whether Megan's Law can be considered a special law to the extent that it applies to persons who pled or were found guilty prior to its effective date is not addressed here in light of this Court's analysis of retrospective application of the law below.

16. *See, e.g.*, Tenn. Const. art. I, sec. 20 ("no retrospective law ... shall be made"); Oh. Const. art. II, sec. 28 (legislature "shall have no power to pass retroactive laws"); Colo. Const. art. II, sec. 11 (no laws "retrospective in ... operation"); N.H. Const. part I, art. 23 ("Retrospective laws are highly injurious, oppressive, and unjust. No such laws ... should be made, either for the decision of civil causes, or the punishment of offenses").

Megan's Law to those who pled guilty or were found guilty prior to the act's January 1, 1995, effective date.

The Does' argument finds strong support in *R.W.*, 168 S.W.3d 65, in which plaintiff made a parallel argument that Megan's Law violated Missouri's bar on *ex post facto* laws. This Court rejected the claim not because the law was not retrospective, but because the law was civil rather than punitive in nature. In so doing, *R.W.* specifically acknowledged, *"The registration statutes operate retrospectively in this case."* Id. at 68 (emphasis added).

This statement has direct application to the Does' assertion that the law is unconstitutional for this very reason. The statement is *dicta*, however, for the issue whether such laws are barred by the Missouri Constitution was not briefed in *R.W.* While persuasive, *R.W.* is not determinative of the question now before this Court: does Missouri's Megan's Law violate article I, section 13 to the extent it operates retrospectively on persons who pleaded or were found guilty prior to its effective date?

The constitutional bar on civil laws retrospective in their operation has been a part of Missouri law since this State adopted its first constitution in 1820.[17] The 1875 constitutional debates note this bar is broader than the *ex post facto* bars in other states:

> [T]he prohibition of retrospective legislation or forbidding the General Assembly to pass a law retrospective in its character did at one breath accomplish the prohibition of a more extensive kind of a more comprehensive nature than was to be found in any of the constitu-

tions of but three states in the Union. So that the prohibition of an act retrospective in its operation in the Constitution of 1820 rendered it nearly superfluous to add the prohibition of an *ex post facto* law or of a law impairing the obligation of contracts, or of a law impairing vested rights. . . .

Debates of the Missouri Constitutional Convention 1875, vol. IV at 95 (Isidor Loeb & Floyd C. Shoemaker, eds., State Historical Soc'y of Mo., 1938).

In interpreting Missouri's broad constitutional bar, this Court said:

> A retrospective law is one which creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions or considerations already past. It must give to something already done a different effect from that which it had when it transpired.

*Squaw Creek Drainage Dist. v. Turney*, 235 Mo. 80, 138 S.W. 12, 16 (1911). The language used to bar laws retrospective in operation remained the same in the 1945 constitution. Mo. Const art. I, sec. 13.

*Jerry–Russell Bliss v. Hazardous Waste*, 702 S.W.2d 77 (Mo. banc 1985), sets out types of situations in which a law will be found to be retrospective in operation, stating that a new law may not "impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions . . . already past." Id. at 81 (quotation omitted). Bliss argued that an act prohibiting issuance of a hazardous waste management license to habitual violators of past hazardous waste laws violated the prohibition on retrospective laws

---

**17.** The 1820 constitution stated, "no *ex post facto* law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed. . . ." Mo. Const. art. 13, sec.

17 (1820), RSMo 1825, vol. I at 60. The 1875 constitution employed nearly identical language. Mo. Const. art. 2, sec. 15 (1875), RSMo 1879, vol. I at 56.

since the violations occurred prior to the act's passage.

■ This Court rejected the argument, noting the act only made past practices of the company "a consideration for the granting or denial of a hazardous waste transporter's license." Id. "A statute is not retrospective or retroactive . . . because it relates to prior facts or transactions but does not change their legal effect, or because some of the requisites for its action are drawn from a time antecedent to its passage, or because it fixes the status of an entity for the purpose of its operation." Id. at 81.

*La–Z–Boy Chair Co. v. Director of Economic Development*, 983 S.W.2d 523 (Mo. banc 1999), applied these principles to a claim that a law violated a vested right. It held that "[a] 'vested right' has been defined as 'a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another.'" *Id.* at 525, quoting, *Fisher v. Reorganized Sch. Dist.*, 567 S.W.2d 647, 649 (Mo. banc 1978). In that case, this Court rejected a taxpayer's argument that it had a vested right to assume that because it had a tax exemption for its new plant when built, that exemption would continue. *La–Z–Boy* said no one has a vested right that the law will remain unchanged.

Again addressing the retrospective law bar, *Corvera Abatement Technologies, Inc. v. Air Conservation Commission*, 973 S.W.2d 851 (Mo. banc 1998), rejected a challenge to asbestos abatement project regulations. As first promulgated, the regulations failed to include a required fiscal note and, thus, could not immediately go into effect. The legislature passed an amendatory law containing a fiscal note. Because the commission applied the regulations "only as to acts that occurred after the amendment of the statute and the publication of the corrected fiscal note," *id.* at 856, the law did not violate the prohibition on retrospective laws and there was no need for formal re-promulgation of the regulations for them to go into effect. Id.[18]

By contrast, *Doe v. Roman Catholic Diocese*, 862 S.W.2d 338 (Mo. banc 1993), held that a law adopting a discovery rule for cases of childhood sexual abuse involving, for example, repressed memories, *did* violate the prohibition on laws retrospective in their operation by providing, "This section shall apply to any action commenced on or after [the act's effective date] including any action which would have been barred by the application of the statute of limitation applicable prior to that date." Id. at 340. *Doe* held that "once the original statute of limitations expires and bars the plaintiff's action, the defendant has acquired a vested right to be free from suit, a right that is substantive in nature, and therefore, *article I, section 13*, prohibits the legislative revival of the cause of action." Id. at 341 (emphasis in original). The clear legislative intent to apply the law retrospectively could not supersede the specific prohibition on retrospective laws. Id.

Applying the reasoning of *Doe* here, the Does argue that their release from probation or parole is comparable to the running

---

**18.** Applying a similar analysis, this Court rejected arguments that a law allowing the years teachers had already worked part-time to be counted toward tenure on a pro-rated basis was retrospective in operation merely because it considered past teaching service in determining future entitlement to tenure. As it did not change past teaching contracts or tenure decisions, it was not a prohibited retrospective law. *Dial v. Lathrop R–II Sch. Dist.*, 871 S.W.2d 444, 447 (Mo. banc 1994).

of the statute of limitations and that once they were released they had a vested right in being free from further collateral consequences of their prior pleas of guilty, particularly in the case of those who were not convicted but merely pled guilty in return for an SIS. This Court rejects the analogy. Nothing in the Does' releases from supervision states that no further collateral consequences will be imposed. They merely are no longer on probation or parole. Various collateral consequences still attend their prior pleas of guilty.[19] Moreover, a vested right "must be something more than a mere expectation based upon an anticipated continuance of existing law." *Fisher*, 567 S.W.2d at 649 (quotation omitted). The Does had no vested right in the law remaining unchanged.

Similarly, this Court rejects the claim that publication of true information about the Does affects a past transaction to their substantial detriment by imposing a new obligation, adding a new duty or attaching a new disability in respect to transactions or considerations already past. *See Bliss*, 702 S.W.2d at 82. The *publication* of this information merely looks back at antecedent actions, as did the regulations in *Corvera*.

The same cannot be said, however, of the Does' additional argument that the bar on laws that operate retrospectively is violated by the imposition of an affirmative obligation on them to register upon release and then regularly thereafter. The obligation to *register* by its nature imposes a new duty or obligation. Respondent argues that this is unimportant because Megan's Law only criminalizes a failure to register and the Does could not have failed

to register until after Megan's Law became effective.

Here, however, the Does are not complaining that they have been held or will be held criminally liable for failing to register. They are complaining about application of the registration requirement to them, based solely on their pre-act criminal conduct. As to all but Jane Doe III, who was not convicted until 1998, the application of that requirement truly is retrospective in its operation. It looks solely at their past conduct and uses that conduct not merely as a basis for future decision-making by the state, in regard to things such as the issuance of a license, or as a bar to certain future conduct by the Does, such as voting. Rather, it specifically requires the Does to fulfill a new obligation and imposes a new duty to register and to maintain and update the registration regularly, based solely on their offenses prior to its enactment. This violates the standard set out in *Bliss* and violates our constitutional bar on laws retrospective in operation.

## IV. CONCLUSION

Missouri's constitutional bar on laws retrospective in their operation compels this Court to invalidate Megan's Law's registration requirements as to, *and only as to*, those persons who were convicted or pled guilty prior to the law's January 1, 1995, effective date. This ruling applies only to the registration requirements. All other provisions of Megan's Law remain in effect as to these and all other persons subject to it. Further, the law is fully in effect as to all persons whose pleas or judgments of conviction were entered on or after its

---

**19.** *Reynolds v. State,* 994 S.W.2d 944, 946 (Mo. banc 1999) (parole is itself a collateral consequence as the courts control neither eligibility, conditions, nor release from parole); *State ex rel. Nixon v. Clark,* 926 S.W.2d 22, 25

(Mo.App. W.D.1996) (deportation proceedings may be initiated after plea of guilty in criminal court). *See also* cases and statutes cited *supra* note 7.

effective date of January 1, 1995, more than 11 years ago, or who committed additional crimes subject to Megan's Law thereafter, and is fully effective as to SVPs.

The judgment is affirmed in part and reversed in part, and the case is remanded.

All concur.