

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| ERIC EDWARD BACON, | ) | No. ED107919 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Hon. Jon Alan Cunningham |
| MISSOURI STATE HIGHWAY PATROL, | ) | |
| COLONEL DAVID TODD AND ST. | ) | |
| CHARLES COUNTY PROSECUTING | ) | |
| ATTORNEY, | ) | |
| | ) | Filed: |
| Appellants. | ) | April 7, 2020 |

The Missouri State Highway Patrol, Colonel David Todd and the St. Charles County Prosecuting Attorney (collectively "MSHP") appeal from the judgment granting E.B.'s ("Petitioner") petition to have his name removed from the sex offender registry under Missouri's Sex Offender Registration Act ("SORA"), Section 589.400 *et seq*.  We affirm.

On November 21, 2002, Petitioner pled guilty in St. Charles County to possession of child pornography.  On July 29, 2004, Petitioner pled guilty in St. Louis County to possession of child pornography.  He received a suspended imposition of sentence in both cases and was placed on probation. SORA did not include a registration requirement for this offense at the time of Petitioner's adjudications.  Possession of child pornography was added to the list of offenses requiring registration when SORA was amended in August 2004.  Petitioner was notified that he was required to register as a sex offender and has been on the registry for at least ten years.

Until recently, SORA treated all sexual offenses the same and imposed on all offenders a lifetime registration requirement, with limited exceptions. Effective August 28, 2018, the legislature restructured SORA. Sexual offenders are now divided into three tiers based on the severity of the offense, and each tier has different registration periods ranging from fifteen years to the offender's lifetime. The legislature also included provisions under which repeat offenders are subjected to higher tiers and longer registration periods. Below is a summary of each tier:

- Tier I contains fifteen listed offenses, including possession of child pornography. *See* Section 589.414.5(1)(a)-(o). Those "adjudicated"[1] for a tier I offense are required to register for fifteen years and they must report to law enforcement annually. *See* Sections 589.400.4(1) and 589.414.5. The registration period can be reduced to ten years if the offender maintains a clean record. *See* Section 589.400.5

- Tier II covers thirteen listed offenses. *See* Section 589.414.6(1)(a)-(m). Tier II also includes certain repeat tier I offenders: "[a]ny person who is adjudicated of an offense comparable to a tier I offense listed in this section . . . and who is already required to register as a tier I offender due to having been adjudicated of a tier I offense on a previous occasion." Section 589.414.6(2). A tier II offender is required to register for twenty-five years, reporting semi-annually. *See* Sections 589.400.4(2) and 589.414.6.

- Tier III is for the most severe offenders, consisting of thirty-six listed offenses and covering predatory and persistent sexual offenders. *See* Sections 589.414.7(1) and 589.414.7(2)(a)-(jj). Tier III also includes certain repeat tier I and tier II offenders: "[a]ny offender who is adjudicated for a crime comparable to a tier I or tier II offense listed in this section . . . who has been or is already required to register as a tier II offender because of having been adjudicated for a tier II offense, two tier I offenses, or combination of a tier I offense and failure to register offense, on a previous occasion." Section 589.414.7(3). A person adjudicated for a tier III offense is required to register for his lifetime, reporting every ninety days. *See* Sections 589.400.4(3) and 589.414.7.

The legislature intended for those currently on the registry to get the benefit of the new shorter registration time periods for offenses that are now deemed to be in the lower severity tiers: "any person currently on the sexual offender registry for having been adjudicated for a tier I or II

---

[1] An "adjudication," as defined in Section 589.404(1), includes a suspended imposition of sentence following a guilty plea. *Dixon v. Missouri State Highway Patrol*, 583 S.W.3d 521, 523 n.2 (Mo. App. W.D. 2019).

offense . . . or other comparable offenses listed under section 589.414 may file a petition under Section 589.401." Section 589.400.10. A person on the registry for a tier I offense cannot file a petition for removal until ten years has elapsed since the date he was required to register for his most recent offense. *See* Section 589.401.4(1). For a tier II offense, the time period is twenty-five years from that date. *See* Section 589.401.4(2). The date a person is "required to register" is typically three days after adjudication, release from prison or placement on probation. *See* Section 589.400.2.

In September of 2018, shortly after these changes to SORA became effective, Petitioner— as a person "currently on the sexual offender registry"—filed a petition to have his name removed. In accordance with Section 589.401, Petitioner identified the two possession of child pornography cases that required him to register and claimed they arose out of the same incident.[2] He alleged these were tier I offenses. Petitioner asserted that he was adjudicated for those offenses on November 21, 2002 and July 29, 2004. But because those offenses did not carry a registration requirement he was not required to register within three days of either adjudication. Rather, he alleged that the date he was required to register was August 28, 2004, which is when possession of child pornography was added to SORA's list of registerable sex offenses. Because it had been more than ten years since that date, Petitioner argued he was eligible to have his name removed from the registry. The MSHP argued that because he had *two* adjudications for tier I offenses, Petitioner was actually considered a tier II offender under Section 589.414.6(2) and was only

---

[2] According to his testimony, on the same day in February 2002, Petitioner downloaded the pornographic images at his office in St. Louis County (resulting in the July 2004 adjudication) and copied them onto a disk that he took to his home in St. Charles County (resulting in the November 2002 adjudication). It is unclear what impact Petitioner believed these facts had on the evaluation of his adjudications under SORA, but any such reliance on the "same incident" argument has been abandoned on appeal.

eligible to petition for removal after twenty-five years. The trial court agreed with Petitioner and ordered his name removed from the registry. This appeal follows.

This appeal requires us to interpret, as a matter of first impression, the meaning of the upgrade provision for repeat tier I offenders in Section 589.414.6(2). This is a question of law that we review de novo. *Dixon v. Missouri State Highway Patrol*, 583 S.W.3d 521, 523 (Mo. App. W.D. 2019). As always, our "primary obligation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *Id*. We are only permitted to look beyond the plain meaning of the statute when the language is ambiguous or would lead to an absurd or illogical result. *See Akins v. Director of Revenue*, 303 S.W.3d 563, 565 (Mo. banc 2010).

Section 589.414.6(2) states that a tier II offender includes "[a]ny person who is adjudicated of an offense comparable to a tier I offense listed in this section . . . and who is already required to register as a tier I offender due to having been adjudicated of a tier I offense on a previous occasion." This provision plainly requires not only a previous adjudication for a tier I offense but *also* the requirement to register as a tier I offender due to that adjudication. Moreover, by defining this repeat offender as one "who *is* adjudicated" for a tier I offense and "who *is* already required to register" for a previous tier I offense, it is also clear that the requirement to register must exist *at the time of the second adjudication*. In other words, the first tier I adjudication must have carried a requirement to register and that requirement must have existed at the time of the second tier I adjudication in order to upgrade the offender to tier II under Section 589.414.6(2).

In this case, when Petitioner was adjudicated for his second tier I offense in 2004, he already had an adjudication for a tier I offense on a previous occasion in 2002, but he was not *at that time* already required to register—"as a tier I offender" or for any reason—because possession

4

of child pornography did not yet carry a registration requirement under SORA. Rather, he became required to register for both offenses simultaneously *after* that 2004 adjudication by virtue of a change in the law. The precise date on which that requirement arose is unclear, but it is not dispositive because, as discussed in the footnote, any of the possible dates was more than ten years prior to his petition for removal.[3] What is dispositive is the fact that the requirement to register for the first tier 1 offense in 2002 *did not exist* at the time of the second adjudication for a tier I offense in 2004. Petitioner's situation simply does not fit into the plain meaning of the provision for upgrading him to a tier II offender.

The MSHP argues that this construction of the words "is already required to register" in Section 589.414.6(2) is "hyper-technical" and permits a repeat offender like Petitioner to avoid the increased registration length, which is contrary to the statute's purpose. The MSHP contends that by creating a three-tiered system, the legislature intended to take a "three strikes" approach to recidivists, under which each subsequent tier I offense subjects the offender to a higher tier and longer registration period until, upon his third tier I offense, he is "out" and must register for his lifetime. This is reasonable and necessary, it argues, because multiple offenses signal a greater risk of recidivism. Therefore, the MSHP insists, we must construe "is already required to register"

---

[3] Everyone at trial seemed to agree that the relevant change in the law was the amendment to SORA, effective August 28, 2004, and that was the operative date for calculating the ten-year period under Section 589.401.4(1). But now Petitioner contends that because it has been held that SORA cannot operate retrospectively to require registration for offenses that predate its enactment, it is not clear that the 2004 amendments obligated him to register for pre-amendment offenses. *See Doe v. Phillips,* 194 S.W.3d 833, 852 (Mo. banc 2006). He contends that it was actually the enactment of the federal Sex Offender Registration and Notification Act ("SORNA") 42 USCA Section 16901, *et seq.*—which *does* operate retrospectively to pre-enactment offenders—that obligated him to register for his 2002 and 2004 sex offenses in Missouri. *See Doe v. Keathley*, 290 S.W.3d 719, 720 (Mo. banc 2009). There is some question as to the precise date on which pre-enactment offenders were required to register under SORNA, but it could have been as early as February 28, 2007 or as late as August 1, 2008. *See Petrovick v. State*, 537 S.W.3d 388, 392 (Mo. App. W.D. 2018) (discussing "uncertainty as to the precise date on which the Attorney General of the United States specified that SORNA would apply to pre-enactment offenders"). Because we conclude Petitioner is a tier I offender, we need not resolve on which of these particular dates Petitioner's obligation to register arose—August 2004 under SORA or February 2007 or August 2008 under SORNA—because they are all more than ten years before his September 2018 petition for removal.

in Section 589.414.6(2) as if it simply means that the first tier I offense was a "registerable offense."  In other words, in Petitioner's case, his 2002 adjudication for a tier I offense that ultimately required registration would be a "registerable offense."  Because "2002 comes before 2004," the MSHP observes, the 2002 registerable offense was adjudicated on an occasion previous to the 2004 second adjudication for a tier I offense and he must be deemed a tier II offender.  We disagree.

First and foremost, that is not what SORA says. If the legislature meant for a prior adjudication of a registerable tier I offense *alone* to elevate one from tier I to tier II, then it would have used words to that effect instead of the phrase "is already required to register."  It might have edited Section 589.414.6(2) the MSHP's arguments suggests:  ". . . and who ~~is already required to register as a tier I offender due to having~~ <u>has</u> been adjudicated of a <u>registerable</u> tier I offense on a previous occasion."   But, of course, we cannot ignore the words that are actually used in the statute.  We "must presume that every word, sentence, or clause in a statute has effect and that the legislature did not insert superfluous language." *See Lumetta v. Sheriff of St. Charles County*, 413 S.W.3d 718, 720 (Mo. App. E.D. 2013).  It is not enough that Petitioner was at some point required to register *because of* a 2002 adjudication, which came before the 2004 adjudication; rather, the key under Section 589.4141.6(2) is the existence of that requirement *at the time of* the second adjudication.  Because those words are clear and unambiguous, we are not permitted to rewrite the statute the way MSHP suggests. *See generally Strosnider v. Replogle*, 502 S.W.3d 756, 759 (Mo. App. S.D. 2016).   Even if it was unclear whether the number and chronology of registerable offenses alone was enough to upgrade a tier I offender to tier II, that ambiguity would have to be resolved under the rule of lenity by construing it against the government and giving Petitioner the benefit of the shorter registration period. *See Dixon*, 583 S.W.3d at 528 (applying rule of lenity to

resolve ambiguities in 2018 SORA amendments against government); *see also Kersting v. Replogle*, 492 S.W.3d 600, 605 (Mo. App. W.D. 2016).

Second, the MSHP's suggested rewrite is not the only way to effectuate the legislative goal of addressing recidivism. One of the purposes of SORA is—and has always been—"to respond to the known danger of recidivism among sex offenders." *Doe v. Phillips,* 194 S.W.3d 833, 839 (Mo. banc 2006). The restricting of SORA into tiers in 2018 indicates that the legislature recognizes that not all sex offenses are equally severe and not all sex offenders need to be monitored by way of registration for the same amount of time. Likewise, the specific provisions for upgrading a repeat offender to the next tier indicate that the legislature also recognized that not all repeat sex offenders need to be monitored for longer amounts of time after a second offense. Rather, Section 589.414.6(2) indicates the legislature's belief that, for whatever reason, one who reoffends while he is supposed to be on the registry needs to be monitored for longer after his second offense than one who reoffends while he is not supposed to be on the registry. Thus, one "who *is* adjudicated" for a second tier I offense and who, at that time, "*is* already required to register" is upgraded to tier II and must then register for twenty-five years; whereas, one whose second offense is adjudicated at a time when he is not required to be on the registry—either because the registration period on the first offense has expired or, as in Petitioner's case, never existed in the first place—need only register for ten years after that second offense.[4] It is not for us to

---

[4] We note—without deciding, since this provision is not at issue in this appeal—that it appears there is no such distinction between re-offense while on the registry and re-offense while not on the registry when determining whether to upgrade a repeat tier II offender to tier III. The language of that provision, Section 589.414.7(3), is broader and upgrades to tier III anyone who is adjudicated of a tier I or tier II offense and who "*has been or* is already required to register" as a tier II offender. In other words, the upgrade occurs regardless of whether the requirement to register as a tier II offender has lapsed at the time the offender is adjudicated for a subsequent tier I or tier II offense.

The MSHP points out that when describing the ways one could be required to register as a tier II offender, the legislature included "having been adjudicated for . . . *two tier I offenses*." Section 589.414.7(3) (emphasis added). This appears to be merely a shorthand way to reference the upgrade in Section 589.414.6(2), not an indication that we should disregard the actual language of that provision and simply conclude that two tier I offenses equals a tier II offender. And, again, to the extent use of this shorthand phrasing creates an ambiguity as to what elevates a tier I

question the reasoning behind the language used, but to strictly apply the words in the statute as they are written. *See Dixon*, 583 S.W.3d at 528 (SORA is to be strictly construed).

We would only be permitted to disregard the plain language of Section 589.414.6(2) if applying the statute as written would lead to an absurd or illogical result. It is not absurd nor illogical to base the upgrade of a repeat tier I offender on whether he was already required to register as a tier I offender at the time of his second adjudication for a tier I offense and not solely on the number of times an offender has been adjudicated for a registerable sex offenses. A repeat tier I offender is still subject to increased registration periods under our interpretation, just not based on the criteria the MSHP suggests. Because Petitioner was not required to register *at all* at the time of his second adjudication for what is now a tier I offense, he cannot be upgraded to a tier II offender under Section 589.414.6(2). Petitioner is a tier I offender, it has been at least ten years since the date he was required to register for his most recent offense and it is undisputed that Petitioner has complied with the other requirements for filing the petition and satisfied the other conditions for removal set out in Section 589.401. Thus, the court did not err in granting his petition and removing him from the sex offender registry.

Point denied. The judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Robert M. Clayton III, P. J. and
Roy L. Richter, J., concur.

---

offender to tier II status, that ambiguity also would be construed against the government. *See Dixon*, 583 S.W.3d at 528.