

# SUPREME COURT OF MISSOURI
## en banc

REBECCA KARNEY and )    *Opinion issued March 31, 2020*
JOHNNY MILLER, )
                                          )
      Respondents, )
                                          )
v. )    No.  SC97833
                                          )
THE DEPARTMENT OF LABOR AND )
INDUSTRIAL RELATIONS and )
TODD SMITH, )
                                          )
      Appellants, )
                                          )
and )
                                          )
DARRYL FORTE and JACKSON )
COUNTY, MISSOURI, )
                                          )
      Defendants. )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### The Honorable James F. Kanatzar, Judge

The Missouri Department of Labor and Industrial Relations, Darryl Forte of the Jackson County Sheriff's Office, Jackson County, Missouri, and Todd Smith, chair of the State Board of Mediation (collectively, "Appellants") appeal the circuit court's declaration that § 105.585(2)[1] is unconstitutional as it relates to picketing. No party

---

[1] All statutory references are to RSMo Supp. 2018, unless otherwise noted.

challenges the circuit court's order "that nothing in this judgment shall be construed to grant plaintiffs or any public employee in the State of Missouri the right to strike," which is consistent with the well-settled doctrine that "public employees—unlike their private-sector counterparts—are not permitted to strike." *Independence-Nat'l Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131, 141 (Mo. banc 2007). The circuit court's judgment is affirmed to the extent it enjoins Appellants from enforcing or implementing § 105.585(2)'s mandated prohibition against "picketing of any kind" in its negotiations for a new labor agreement with the CWA Local 6360.

### Factual and Procedural History

Rebecca Karney and Johnny Miller (collectively, "Karney") are dispatchers in the Jackson County Sheriff's Office and members of the Communication Workers of America Local 6360. The dispatchers are currently engaged in negotiations with the Jackson County Sheriff's Office for a new labor agreement. Their previous labor agreement expired December 31, 2018, and did not prohibit picketing. Karney filed a petition in the circuit court, seeking a judgment declaring § 105.585(2) unconstitutional and enjoining [Appellants] from "enforcing or otherwise implementing … § 105.585(2)."

Section 105.585 was enacted in 2018 via House Bill No. 1413 and governs labor agreements negotiated between public entities and labor organizations. The challenged provision provides:

> Every labor agreement shall expressly prohibit all strikes and picketing of any kind. A strike shall include any refusal to perform services, walkout, sick-out, sit-in, or any other form of interference with the operations of any public body. Every labor agreement shall include a provision acknowledging that any public employee who engages in any strike or

2

concerted refusal to work, or who pickets over any personnel matter, shall be subject to immediate termination of employment[.]

§ 105.585(2).

Karney alleges the prohibition of "picketing of any kind" and "pickets over any personnel matter" violates article I, §§ 2, 8-9, and 29 of the Missouri Constitution, which provide:

> That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their industry; that all persons are created equal and are entitled to equal rights and opportunities under the law; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design.

Mo. Const. art. I, § 2.

> That no law shall be passed impairing the freedom of speech, no matter by what means communicated: that every person shall be free to say, write or publish, or otherwise communicate whatever he will on any subject, being responsible for all abuses of that liberty; and that in all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and in suits and prosecutions for libel the jury, under the direction of the court, shall determine the law and the facts.

Mo. Const. art. I, § 8.

> That the people have the right peaceably to assemble for their common good, and to apply to those invested with the powers of government for redress of grievances by petition or remonstrance.

Mo. Const. art. I, § 9.

> That employees shall have the right to organize and to bargain collectively through representatives of their own choosing.

Mo. Const. art. I, § 29.

3

After a bench trial, the circuit court declared § 105.585(2) unconstitutional under both the Missouri Constitution and the United States Constitution as it relates to picketing, and enjoined defendants from using or applying § 105.585(2)'s prohibition against picketing "in negotiating any collective bargaining agreement with Plaintiffs." This Court has jurisdiction. Mo. Const. art. V, § 3.

## Standard of Review

"When reviewing a declaratory judgment, an appellate court's standard of review is the same as in any other court-tried case." *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 413 (Mo. banc 2001). The circuit court's judgment will be upheld "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

"This Court reviews a constitutional challenge to a statute *de novo*." *Kansas City Premier Apartments, Inc. v. Mo. Real Estate Comm'n*, 344 S.W.3d 160, 167 (Mo. banc 2011). "A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision. The person challenging the statute's validity bears the burden of proving the act clearly and undoubtedly violates the constitution." *Kansas City*, 344 S.W.3d at 167.

## Analysis

Karney alleges § 105.585(2)'s prohibition against picketing violates her constitutional rights to equal protection, free speech, peaceable assembly, and collective bargaining under the Missouri Constitution article I, §§ 2, 8-9, and 29. Accordingly, she

4

sought an order from the circuit court declaring § 105.585(2) unconstitutional and permanently enjoining Appellants from "enforcing or otherwise implementing … § 105.585(2)."

**Plain Text and Ordinary Meaning of Section 105.585(2)**

Appellants contend the plain meaning of § 105.585(2) prohibits picketing **only** in conjunction with a labor strike. Such construction, they argue, would be constitutional and, therefore, favored over any unconstitutional interpretation.

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). This Court resorts to other rules of statutory interpretation only when the plain meaning of the statute is ambiguous or defeats the purpose of the statute. *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014). "The rules of statutory interpretation are not intended to be applied haphazardly or indiscriminately to achieve a desired result." *Parktown Imports, Inc.*, 278 S.W.3d at 672.

Appellants are asking this Court to apply the rule of statutory interpretation that "[i]f a statutory provision can be interpreted in two ways, one constitutional and the other not constitutional, the constitutional construction shall be adopted." *State v. Vaughn*, 366 S.W.3d 513, 517 (Mo. banc 2012). The plain language of § 105.585(2), however, offers no room to derive ambiguity. Without ambiguity, this Court is bound to give effect to the intent reflected in the statute's plain language and cannot resort to other means of

5

interpretation. *Parktown*, 278 S.W.3d at 672. The statute plainly requires all public labor agreements to prohibit "picketing of any kind."

Appellants point to a narrow dictionary definition of the noun, "picket", to argue "picketing of any kind" actually means "picketing in conjunction with a strike." However, the term's plain meaning is not so narrow and, if this Court were to limit the term to Appellants' proffered definition, it renders a large part of the statute superfluous. The statute already provides that any person engaged in a strike "shall be subject to immediate termination." There is no reason to repeat the prohibition of picketing in conjunction with a strike because it is already expressly prohibited by the prohibition against employee strikes. Further, "picketing" is commonly understood to encompass much more than a demonstration in conjunction with a labor strike[2] and had the legislature intended that usage, it would have narrowed its language. Thus, the plain meaning of the phrase "picketing of any kind" must be construed to include demonstrations and protests unrelated to an employee strike.

**Section 105.585(2) Violates article I, Section 8 of the Missouri Constitution**

Mo. Const. art. I, § 8 provides:

That ***no law shall be passed impairing the freedom of speech***, no matter by what means communicated: that every person shall be free to say, write or

---

[2] "The terms 'loiter' and 'picket' are not defined either in the ordinance or in authoritative State decisions. Therefore, they must be judged ***as covering all the activities embraced by the prohibition against the carrying of signs in the vicinity of a labor dispute*** for the purpose mentioned." *Carlson v. California*, 310 U.S. 106, 112 (1940) (emphasis added); *see also Snyder v. Phelps*, 562 U.S. 443, 454-56 (2011); *Cox v. Louisiana*, 379 U.S. 559, 565-68 (1965); *Retail Clerks Int'l. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 375 U.S. 96, 105 (1963) ("On the other hand, ***picketing in order to get an employer to execute an agreement to hire all-union labor*** in violation of a state union-security statute lies exclusively in the federal domain." (emphasis added)); *Thornhill v. Alabama*, 310 U.S. 88, 100-01 (1940).

> publish, or otherwise communicate whatever he will on any subject, being responsible for all abuses of that liberty[.]

(Emphasis added). "While provisions of our state constitution may be construed to provide more expansive protections than comparable federal constitutional provisions, analysis of a section of the federal constitution is strongly persuasive in construing the like section of our state constitution." *Doe v. Phillips*, 194 S.W.3d 833, 841 (Mo. banc 2006) (internal citation and quotations omitted).[3]

The Supreme Court of the United States, interpreting the freedom of speech clause in the First Amendment context, has held public employees, by virtue of their employment with the government, must as to their individual employment "accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). This includes a restraint on the freedom of speech, to the extent it is "justified by the consensual nature of the employment relationship and by the unique nature of the government's interest." *Borough of Duryea, Penn. v. Guarnieri*, 564 U.S. 379, 387 (2011). Such speech restrictions against public employees are therefore subject to a

---

[3] Though this Court **may** construe a corresponding state constitutional provisions to provide more expansive protections than its federal constitutional counterpart, this Court has consistently construed like provisions similarly. *See Doe*, 194 S.W.3d at 841 ("This Court rejects the … invitation to interpret the Missouri due process, equal protection or *ex post facto* clauses more broadly than comparable federal constitutional provisions here."); *State v. Justus*, 205 S.W.3d 872, 878 (Mo. banc 2006) ("The confrontation rights protected by [art. I, § 18(a) of] the Missouri Constitution are the same as those protected by the Sixth Amendment."); *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005) (holding "the same analysis applies to cases under the Missouri Constitution as under the United States Constitution" in the Fourth Amendment context because "[t]he Missouri constitution offers the same level of protection"); *State ex rel. Munn v. McKelvey*, 733 S.W.2d 765, 767 (Mo. banc 1987) ("The privilege against self-incrimination is secured by the Fifth Amendment to the United States Constitution and by Article I, section 19 of the Missouri Constitution. The principles to be followed in applying these two provisions are consistent.").

unique analysis by the Court because "Congress may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. Nat'l Treasury Emps. Union,* 513 U.S. 454, 465 (1995). Individualized free speech claims against the government by public employees are analyzed under the framework established in *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563 (1968), and reiterated in *Connick v. Myers*, 461 U.S. 138 (1983).

"Our task … is to seek a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick*, 461 U.S. at 142 (internal quotations omitted). Though a public employee's speech concerning private, in-office matters of little public interest is not protected and may be freely restrained,[4] the same cannot be said for matters of public concern. "[S]peech on matters of public concern may be restricted *only if* the interest of the state as an employer, in promoting the efficiency of the public services it performs through its employees outweighs the interests of the employee as a citizen, in commenting upon matters of public concern." *Harris v. Quinn*, 573 U.S. 616, 653 (2014) (emphasis added) (internal quotations omitted). For example, in *Pickering*, the Court held a high school teacher's public rebuke of the school board's allocation of school funds

---

[4] "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick*, 461 U.S. at 146.

was "a matter of legitimate public concern" for which "free and open debate is vital to informed decision-making by the electorate." *Pickering*, 391 U.S. at 571-72.[5]

The *Pickering* framework, however, "was developed for use in a very different context—in cases that involve '*one* employee's speech and its impact on that employee's public responsibilities.'" *Janus v. Am. Fed'n of State, Cty., and Mun. Emps., Council 31*, 138 S. Ct. 2448, 2472 (2018) (emphasis added) (quoting *Treasury Emps.*, 513 U.S. at 467).

The Supreme Court has "looked to *Pickering* in considering general rules that affect broad categories of employees … [and] acknowledged that the standard *Pickering* analysis requires modification in that situation." *Id.* (citing *Treasury Emps.*, 513 U.S. at 466-48). The appropriate framework to apply to challenges to general rules affecting broad categories of employees, such as all public employees who enter into a labor agreement with the State, is set forth in *Treasury Employees*. To withstand a constitutional challenge, "[t]he Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Treasury Emps.*, 513 U.S. at 468 (quoting *Pickering*, 391 U.S. at 571). The primary difference between this test and that set forth in *Pickering* is

---

[5] In *Pickering*, the Court noted:
> Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operations of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.

391 U.S. at 572.

"the Government's burden is greater with respect to this statutory restriction on expression than with respect to an isolated disciplinary action." *Id*.

The statute's blanket prohibition against "picketing *of any kind*"—even if such prohibition extends only to the bounds of being related to a labor agreement—ignores there are matters of public concern about which the state would have no ability to limit its employees' right to speak when the speech is unobtrusive to the efficiency of the services it performs through its employees. A perfect example of this unobtrusive speech is before this Court today. Karney presented evidence that she and a group of Jackson County dispatchers picketed the Jackson County Sheriff's Office to "try to get public pressure to … help increase [Jackson County dispatcher] wages."[6] This picket was performed on public ground by dispatchers on their own time. The picket was precipitated by in-person and text message notice to the Sheriff of the date and time of the picket. The picket was not performed in conjunction with a strike, walk-out, sick-out, or sit-in. It included no requests for people to boycott the sheriff's office or refrain from entering the building. The picket was also openly aided by officers in the office, who came outside to bring the protesters coffee.

---

[6] The standard wages of a public employee are inherently matters of public concern, as they directly relate to the allocation of public funds. *Harris*, 573 U.S. at 654. Karney contends the allegedly low wages of Jackson County dispatchers led to "a big rollover in dispatchers" in which Jackson County ends up training new 911 dispatchers before "they go to other units that pay more money." In addition, it is beyond dispute that § 105.585 contemplates picketing over wages in its prohibition against picketing *of any kind*. "Labor agreements negotiated between a public body and a labor organization may cover wages, benefits and all other terms and conditions of employment for public employees within the bargaining unit[.]" § 105.585.

10

Though the State may impose some limits on the speech of its employees, even about matters of public concern, § 105.585(2)'s prohibition against "picketing of any kind" is unconstitutionally broad. Public employees have a right to exercise their freedom of speech about matters of public concern when that speech does not impede the efficiency of the public services the state performs through its employees.

The later provision requires labor agreements to "include a provision acknowledging that any public employee … who pickets over any personnel matter[] shall be subject to immediate termination." Were this interpreted to include matters of public concern, then the concerns expressed in *Treasury Employees* would be at issue. § 105.585(2). Speech regarding a particular "personnel matter"[7] was the type of public employee speech the Supreme Court held is not protected by the First Amendment. *Connick*, 461 U.S. at 147.[8]

In *Connick*, the Supreme Court held all but one question posed in a questionnaire distributed around the office by a public employee did not touch on matters of public concern and, therefore, were not protected by the First Amendment. *Id*. at 149. The questions posed by the public employee primarily sought to gauge "the confidence and trust that Myers' coworkers possess in various supervisors, the level of office morale, and

---

[7] "Personnel" is "the division of an organization concerned primarily with the selection, placement, and training of employees and with the formulation of policies, procedures, and relations with employees or their representatives[.]" WEBSTER'S NEW INTERNATIONAL DICTIONARY 1687 (3d ed. 2002).

[8]     We hold that only when a public employee speaks not as a citizen upon matters of
        public concern, but instead as an employee upon matters only of personal interest,
        absent the most unusual circumstances, a … court is not the appropriate forum in
        which to review the wisdom of a personnel decision taken by a public agency[.]
*Connick*, 461 U.S. at 147.

the need for a grievance committee." *Id.* at 148. In holding these questions were not of public concern, the Supreme Court reasoned:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id.* at 149. To the extent the prohibition of public employee pickets over "personnel matters" in § 105.585(2) is interpreted narrowly to apply to matters approved in *Treasury Employees* rather than to matters of public concern, its prohibition does not violate the Missouri Constitution nor the United States Constitution.

## Severance is Applicable and Appropriate

Having held the portion of § 105.585(2) prohibiting "picketing of any kind" violates article I, § 8 of the Missouri Constitution and the First Amendment of the United States Constitution, this Court must determine whether those words can be severed. Section § 1.140 provides:

> The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

In *Dodson v. Ferrara*, this Court laid out the test for when an unconstitutional provision of a statute may be severed:

12

> [T]his Court must uphold valid portions of a statute despite the invalidity of other portions when: (1) after separating the invalid portions, the remaining portions are in all respects complete and susceptible of constitutional enforcement; and (2) the remaining statute is one that the legislature would have enacted if it had known that the rescinded portion was invalid.

491 S.W.3d 542, 558 (Mo. banc 2016).  Section 105.585(2) was enacted via HB 1413 in 2018.  During debate on the house floor, the bill's sponsor indicated the provision was intended as "clarifying language" of law already in place.  Apart from the unconstitutional prohibition on "picketing of any kind", the plain language of the statute evidences this intention.

"[P]ublic employees do not have the right to strike against their government employer." *St. Louis Teachers Ass'n v. Bd. of Educ. of the City of St. Louis*, 544 S.W.2d 573, 575 (Mo. banc 1976) (citing § 105.530, RSMo 1969).[9]  Additionally, public employees' speech concerning internal office affairs is not of public concern and, therefore, is not protected speech. *Connick*, 461 U.S. at 149.

Though the portion providing "and picketing of any kind" renders § 105.585(2) constitutionally infirm, its severance leaves the remaining statute intact, complete, and constitutional.  Further, the phrase's mere supplementary nature leaves no question the remaining statute is one the legislature would have enacted had it known the rescinded portion was invalid. [10]

---

[9] Today, § 105.530 provides: "Nothing contained in sections 105.500 to 105.598 shall be construed as granting a right to public employees covered in sections 105.500 to 105.598 to strike."

[10] As severed, § 105.585(2) reads:
> Every labor agreement shall expressly prohibit all strikes.  A strike shall include
> any refusal to perform services, walkout, sick-out, sit-in, or any other form of

13

## Permanent Injunction is the Appropriate Remedy

After declaring § 105.585(2) unconstitutional, the circuit court issued a permanent injunction preventing the State from "the use or application of the prohibition against picketing found in" § 105.585(2). "[A] party seeking a permanent injunction must show only irreparable harm and a lack of adequate remedy at law." *Rebman v. Parson*, 576 S.W.3d 605, 611 (Mo. banc 2019).

Karney has shown irreparable harm, as the CWA Local 6360 and the Jackson County Sheriff's Office have entered negotiations for a new labor agreement. The previous agreement did not prohibit employee picketing. Thus, were the Sheriff's Office required to continue negotiations with the prohibition of "picketing of any kind" in place, Karney and the local CWA chapter would have to choose between getting a new labor agreement in place or retaining their right to peacefully and unobtrusively picket about matters of public concern related to the labor agreement.

Karney has also shown no adequate remedy at law due to the ongoing nature of the labor agreement negotiations. Should this permanent injunction not issue, Karney would be forced to accept a labor agreement that prohibits picketing, a right that her and the 911 dispatchers held and exercised under the previous agreement.

---

interference with the operations of any public body. Every labor agreement shall include a provision acknowledging that any public employee who engages in any strike or concerted refusal to work, or who pickets over any personnel matter, shall be subject to immediate termination of employment[.]

14

**CONCLUSION**

Section 105.585(2)'s prohibition against "picketing of any kind" fails to recognize there are matters of public concern about which public employees retain their constitutional right to comment on so long as their speech does not impede the efficiency of the state services performed through state employees.  However, the remainder of § 105.585(2) is in accord with constitutional limitations on public employee speech.  Severance of the phrase "and picketing of any kind" is appropriate and renders the provision constitutional.  The circuit court's judgment is affirmed to the extent it enjoins the state from prohibiting unobtrusive picketing about matters of public concern in negotiations for a new labor agreement with the CWA Local 6360.

_____
Zel M. Fischer, Judge


All concur.

15