

# SUPREME COURT OF MISSOURI
## en banc

LIANA MACCOLL (FORMERLY )
KNOWN AS LIANA M. BRADFORD), )
                 )
      Appellant, )
                 )
v.                 )
                 )
MISSOURI STATE HIGHWAY PATROL )
AND BOONE COUNTY, MISSOURI, )
SHERIFF,          )
                 )
      Respondent. )

*Opinion issued April 4, 2023, and modified on the Court's own motion May 23, 2023*

No. SC99656

### APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
The Honorable Jeff Harris, Judge

Liana M. MacColl (hereinafter, "MacColl") appeals from the circuit court's entry of summary judgment in favor of the Missouri State Highway Patrol and the Boone County sheriff (collectively, "Respondents") finding she was required to register as a sex offender under the Missouri Sex Offender Registration Act, section 589.400, *et seq.* (hereinafter, "MO-SORA").[1] MacColl contends she never was required to register under state or federal law and, accordingly, she should be removed from Missouri's sex offender registry and issued a declaration she is not required to register going forward.

---

[1] All statutory references are to RSMo Supp. 2018, unless otherwise indicated.

This Court holds a genuine issue of material fact exists regarding whether the sex offender treatment programs MacColl completed during her probationary period qualified as a program certified by a jurisdiction or the attorney general to entitle her to a reduction in her registration period, which would resolve whether MacColl ever was required to register under state or federal law. The circuit court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

**Factual and Procedural Background**

On August 21, 1995, MacColl pleaded guilty to one count of sexual misconduct, a class A misdemeanor, in violation of section 566.090, RSMo 1994. The information charged MacColl with having "deviate sexual intercourse with an unnamed juvenile female, to whom [MacColl] was not married and who was then under the age of seventeen years." The circuit court sentenced MacColl to one year in jail, suspended the execution of her sentence, and placed her on two years' supervised probation. MacColl was required to complete a sexual offender treatment program as a condition of her probation. MacColl attended and completed a sexual offender group therapy program and obtained counseling as directed. The circuit court discharged MacColl from probation on August 21, 1997.

In August 2000, Boone County sheriff's office personnel advised MacColl to register as a sexual offender under MO-SORA due to changes in the law. On August 24, 2000, MacColl registered as a sex offender and has maintained her registration ever since that date.

2

In October 2020, MacColl filed a declaratory judgment action against Respondents seeking a declaration she was a tier I offender under MO-SORA, a declaration she does not have a prior or current independent obligation to register under the Sex Offender Registration and Notification Act, 34 U.S.C. §§ 20901, *et seq.* (hereinafter, "SORNA"), and removal from Missouri's sex offender registry. Respondents maintained MacColl was required to register at the time federal registration requirements were applied in Missouri and she was required to register for her lifetime. The parties filed competing motions for summary judgment.

The circuit court sustained Respondents' motion and overruled MacColl's motion. The circuit court found MacColl was required to register at the time of her 1995 guilty plea because the offense to which she pleaded guilty was a sex offense against a minor as defined by the federal Jacob Wetterling Crimes Against Children & Sexually Violent Offender Registration Program (hereinafter, "Jacob Wetterling Act"). The circuit court further found MacColl was required to register under MO-SORA beginning in August 2000 because she was someone who has been or is required to register under federal law. The circuit court explained MacColl's obligation to register continued after SORNA was enacted in 2006 until her fifteen-year obligation expired in 2010.[2] The circuit court found MacColl did not request a reduction of the fifteen-year registration period previously and was not entitled to request the reduction be applied retroactively. The

___

[2] The circuit court did not state explicitly that MacColl was a tier I offender, but its reference and application of a fifteen-year registration period to calculate whether she was ever obligated to register under SORNA mirrors the registration period for tier I offenders under both MO-SORA and SORNA, as discussed *infra*.

circuit court concluded that, because section 589.400.1(7) required registration for any offender who has been or is required to register under federal law, MacColl could not be removed from the registry or relieved of her obligation to register going forward. MacColl appeals.[3]

## Standard of Review

This Court reiterated the standard of review for summary judgment in *Green v. Fotoohighiam*, 606 S.W.3d 113 (Mo. banc 2020):

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. The facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Only genuine disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.
> ….
>
> The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion.

---

[3] This Court has jurisdiction. Mo. Const. art. V, sec. 10.

*Id*. at 115-16 (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011) (internal quotation marks and citations omitted)).

### MO-SORA and SORNA Registration Requirements

It is instructive to discuss the history and interplay between federal and state sex offender registration requirements before addressing MacColl's points of error. In 1994, Congress enacted the Jacob Wetterling Act, codified as amended at 42 U.S.C. § 16901 *et seq.* (2006), directing states to establish and maintain sex offender registration programs to receive federal funding. To that end, Missouri established MO-SORA, which became effective January 1, 1995. *See* section 566.600, *et seq.*, RSMo 1994. In 1995, MO-SORA did not require registration for offenses committed pursuant to section 566.090 or for any misdemeanor sex offense. In 1997, MO-SORA was transferred to section 589.400 *et seq*.

In August 2000, MO-SORA was amended "to require registration for misdemeanor offenses under chapter 566." *Doe v. Keathley*, 290 S.W.3d 719, 720 (Mo. banc 2009); *see also* section 589.400.1, RSMo Supp. 2001. Offenders who pleaded or were found guilty prior to MO-SORA's effective date of January 1, 1995, were not subject to this registration requirement, however, because it imposed an unconstitutionally retrospective obligation. *Doe v. Phillips*, 194 S.W.3d 833, 852 (Mo. banc 2006). Offenders who pleaded or were found guilty after January 1, 1995, were "fully subject to [MO-SORA's] relevant requirements." *Id*. at 838. These amendments stated sections 589.400 to 589.424 applied to "[a]ny person who … has

5

been or is required to register under federal … law." Section 589.400.1(5), RSMo 2000.[4]

These amendments mandated that "[t]he registration requirements of sections 589.400 through 589.425 are lifetime registration requirements …." Section 589.400.3, RSMo 2000.

In July 2006, SORNA replaced the Jacob Wetterling Act and later was reclassified as 34 U.S.C § 20901 *et seq*.[5] SORNA defines a "sex offender" as "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). A "sex offense" includes "a criminal offense that has an element involving a sexual act or sexual contact with another" and "a criminal offense that is a specified offense against a minor." *Id*. § 20911(5)(A)(i)-(ii). A "specified offense against a minor" includes "[c]riminal sexual conduct involving a minor" and "[a]ny contact that by its nature is a sex offense against a minor." *Id*. § 20911(7)(H)-(I). A "minor" is defined as "an individual who has not attained the age of 18 years." *Id*. § 20911(14).

SORNA places sex offenders into three tiers based upon the severity of their offenses. *Id*. § 20911(2)-(4). Tier I sex offenders must register for fifteen years. *Id*. § 20915(a)(1). Tier II sex offenders must register for twenty-five years. *Id*. § 20915(a)(2). Tier III offenders must register for their lifetime. *Id*. § 20915(a)(3).

---

[4] This provision was moved to section 589.400.1(7) in subsequent MO-SORA amendments and shall be cited as such going forward.

[5] SORNA was codified as 42 U.S.C. § 16901 *et seq*. from 2006 until September 2017 before being reclassified as 34 U.S.C. § 20901 *et seq*. This opinion will use the current title and section numbers for ease of reference.

Tier I offenders may have their full registration period reduced if they maintain a clean record by:

> (A) not being convicted of any offense for which imprisonment for more than 1 year may be imposed; (B) not being convicted of any sex offense; (C) successfully completing any periods of supervised release, probation, and parole; and (D) successfully completing of [sic] an appropriate sex offender treatment program certified by a jurisdiction or by the Attorney General.

*Id*. § 20915(b)(1)(A)-(D). "[T]he period during which the clean record shall be maintained is 10 years" for tier I offenders, *id*. § 20915(b)(2)(A), which would entitle those offenders to a five-year registration reduction. *Id*. § 20915(b)(3)(A). Although the precise date of when SORNA took effect is uncertain, Missouri courts have recognized SORNA did not apply to offenders who have pleaded guilty before its enactment likely until August 2008. *See Horton v. State*, 462 S.W.3d 770, 773 (Mo. App. S.D. 2015) ("SORNA has applied to persons who pled guilty before its enactment since at least August 1, 2008, following the United States Attorney General's issuance of final guidelines."); *Petrovick v. State*, 537 S.W.3d 388, 392 (Mo. App. W.D. 2018) (discussing SORNA's enactment and recognizing SORNA became effective when the final rules and regulations were published August 1, 2008); *Bacon v. Mo. State Highway Patrol*, 602 S.W.3d 245, 249 n.3 (Mo. App. E.D. 2020) (recognizing the precise date SORNA required registration "could have been as early as February 28, 2007, or as late as August 1, 2008").

In 2018, the Missouri legislature substantially amended MO-SORA to align more closely with SORNA and renumbered the subdivisions. Most significantly, the

2018 amendments adopted SORNA's three tier offender categories. Section 589.414.

The 2018 amendments also altered section 589.400.3 by removing the "lifetime

registration requirement" language to state, "The registration requirement of

sections 589.400 through 589.425 shall be as provided under subsection 4 of this section

…." Subsection 4 of section 589.400 mirrored SORNA's registration periods for tier I,

tier II, and tier III offenders. *Compare* section 589.400.4(1)-(3), *with* 34 U.S.C.

§ 20915(a)(1)-(3). The 2018 amendments also provided for a reduction of a tier I

offender's registration period when maintaining a clean record for ten years by meeting

certain criteria, just as in SORNA. *Compare* section 589.400.5(1)(a)-(d), *with* 34 U.S.C.

§ 20915(b)(1)(A)-(D), (2)(A). The 2018 amendments also provided offenders the

opportunity to seek removal from the registry under certain conditions. Section 589.401.

The 2018 amendments did not alter the language of section 589.400.1(7) that stated

sections 589.400 to 589.425 applied to "[a]ny person who … has been or is required to

register under federal … law."

**MacColl's Obligation to Register under MO-SORA and SORNA**

MacColl argues the circuit court erred in sustaining Respondents' summary

judgment motion and overruling her competing motion because it erroneously found she

was a person who has been or is required to register under SORNA and, therefore, was

required to register under MO-SORA section 589.400.1(7) despite having a clean record

under SORNA for more than ten years prior to SORNA's effective date. MacColl

contends she was never required to register under either MO-SORA or SORNA and

8

should not be required to register going forward. Respondents contend MacColl was required to register under both state and federal law for her lifetime.

When MacColl pleaded guilty to her misdemeanor offense in August 1995, SORNA had not been enacted and MO-SORA required only certain felony sex offenders to register. MacColl satisfied the circuit court's probationary terms, including group and individual sex offender treatment, and was discharged from probation in August 1997. Out of an abundance of caution, MacColl began registering after the 2000 MO-SORA amendments upon the advice of Boone County sheriff's office personnel. Yet, *Phillips* later held the 2000 MO-SORA amendments requiring misdemeanor offenders to register was unconstitutionally retrospective as applied to require state registration based solely on a pre-2000 misdemeanor plea. *Phillips*, 194 S.W.3d at 852; *Horton*, 462 S.W.3d at 772; *Petrovick*, 537 S.W.3d at 390. Hence, MacColl is correct MO-SORA does not require her to register based solely on her 1995 misdemeanor plea.

Respondents contend, however, MacColl had an obligation to register as a tier III offender under MO-SORA. The circuit court found MacColl had an obligation to register under federal law and the MO-SORA 2000 amendments "that required registration of misdemeanor offenses and registration of any person who 'has been or is required to register under federal law.'" Because this Court held in *Phillips* that the misdemeanor registration requirement could not be applied retrospectively, the circuit court's judgment largely rested on whether MacColl was a person who has been or is required to register under federal law, which does not require a determination of MacColl's MO-SORA tier status. In the Western District, Respondents argued MacColl's MO-SORA tier status was

9

"completely irrelevant," "immaterial to this appeal," and the briefing below regarding her MO-SORA tier status was "perhaps … unnecessary." Respondents averred that refuting MacColl's arguments regarding her MO-SORA tier status does "not actually aid this Court in reaching a just conclusion, but instead obfuscate[s] and distract[s] from the actual issue," which Respondents contended was whether MacColl had a federal obligation to register. Respondents argued, when reading the circuit court's judgment as a whole, it was clear the circuit court issued summary judgment based on MacColl's independent *federal* requirement to register, did not rely on MO-SORA and, therefore, "a discussion or argument regarding [MacColl's MO-SORA t]ier status does not aid in the disposition of this appeal." Respondents reverse course with this Court, now arguing MacColl's MO-SORA tier status offers an independent basis to require lifetime registration. Because Respondents raised this as a ground to dismiss MacColl's petition and for summary judgment, this Court will address the issue.

The parties dispute how to classify MacColl's offense under MO-SORA's 2018 amendments. MacColl pleaded guilty to the class A misdemeanor of sexual misconduct under section 566.090, RSMo 1994, which later was transferred to section 566.101, RSMo Supp. 2013. MacColl argues, because section 566.090 was transferred to section 566.101 second-degree sexual abuse, this Court should examine section 566.101 and the corresponding sentencing provisions to determine the tier into which she should be classified. Respondents disagree, contending that section 566.090 does not appear in any MO-SORA tier and, therefore, MacColl's offense should be classified as a tier III offense. *See* section 589.414.7(5) (providing "[a]ny offender who is adjudicated in

10

Missouri for any offense of a sexual nature requiring registration under sections 589.400 to 589.425 that is not classified as a tier I or tier II offense in this section" is classified as a tier III offender).  Respondents are correct that section 566.090 is not classified under MO-SORA; however, that was by design because section 566.090 ceased to exist in 2013.  It defies logic that the legislature would categorize offenses that ceased to exist more than five years before the MO-SORA 2018 amendments implemented the tier system.

Respondents alternatively argue that, if MacColl's offense is now classified under section 566.101,[6] she must be a MO-SORA tier III offender because her punishment does not fall into any other tier category.  Section 589.414.5(1)(c) classifies second-degree sexual abuse under section 566.101 as a tier I offense "if the punishment is less than a year."  By contrast, second-degree sexual abuse under section 566.101 is a tier III offense "if the penalty is a term of imprisonment of more than a year."  Section 589.414.7(2)(cc).  In this case, MacColl was sentenced to exactly one year in jail, a penalty or punishment

---

[6] Respondents misstate that MacColl relies on sections 566.083 and 566.093 as the relevant statutes in which to compare her 1995 conviction.  MacColl does not cite or rely on these provisions; instead, she steadfastly maintained that section 566.101 should be examined.  Respondents did not address or dispute MacColl's argument at the Western District or in this Court that section 566.101 was the appropriate statute to examine, nor did Respondents assert at any point until this appeal that sections 566.083 or 566.093 should be examined instead.   Accordingly, this Court will not address or analyze sections 566.083 or 566.093 but will address Respondents' arguments regarding how MO-SORA tier I and tier III classifications are determined in that sections 566.083 and 566.093 contain similar language regarding penalties and punishments to delineate tier classification.

not contemplated by any tier. Thus, the statute is ambiguous as to what tier MacColl's offense falls under for purposes of MO-SORA's registration scheme.

When a statute's plain language contains an ambiguity precluding the legislature's intent from being determined, this Court may apply rules of statutory construction to resolve the ambiguity. *United Pharmacal Co. of Mo. Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 910 (Mo. banc 2006). "[T]he construction of a statutory scheme 'should avoid unreasonable or absurd results.'" *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 608 (Mo. banc 2019) (quoting *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 4 (Mo. banc 2012)).

This Court rejects Respondents' contention that, because MacColl's sentence for a class A misdemeanor does not fit precisely into these tiers, she must be classified as a tier III offender under MO-SORA and subject to lifetime registration pursuant to section 589.414.7(5). A similar argument was considered and rejected in *Dixon v. Missouri State Highway Patrol*, 583 S.W.3d 521 (Mo. App. W.D. 2019), in which the Highway Patrol argued a misdemeanor offender who had his offense later eliminated and renamed as a higher offense should be considered a MO-SORA tier III offender because the original offense was not listed in the tier I or tier II definitions. *Id.* at 526. The Western District explained:

> The unreasonableness of the Highway Patrol's proposed statutory construction is highlighted by examining the *other* offenses included within tier III. All of those offenses are significantly more serious than the offense of which [the offender] was convicted…. Of the thirty-six offenses specifically identified in the definition of a tier III offender, *all* are felonies, with the sole exception of a class B misdemeanor which is included in the definition only if the offense is committed by a recidivist felony offender.

12

> It is hard to believe that the General Assembly intended for [the offender's] conviction of a class C misdemeanor to render him a tier III offender, when *every* other person falling within that category must either be convicted of a *current* felony, or have been convicted of two or more *prior* felonies.

*Id*. at 527-28 (emphasis in original) (footnote and underlining omitted). The *Dixon* court then applied the rule of lenity to find the offender was a tier I offender under MO-SORA, he could be removed from the registry, and he was relieved of his obligation to register going forward. *Id*. at 528-29.

This Court finds it is inappropriate to classify MacColl as a tier III offender under MO-SORA for her misdemeanor offense when, as *Dixon* found, "*every* other person falling within that category must either be convicted of a *current* felony, or have been convicted of two or more *prior* felonies." *Dixon*, 583 S.W.3d at 528. To construe section 589.414 as classifying MacColl as a tier III offender would lead to an "unreasonable or absurd result." *Hillman*, 566 S.W.3d at 608. Hence, this Court finds MacColl's offense is a tier I offense under MO-SORA. MacColl's registration obligation and possible reduction in that registration period under MO-SORA will be considered in conjunction with any SORNA registration requirements as discussed, *infra*.

Respondents further contend MacColl is required to register pursuant to MO-SORA section 589.400.1(7), which requires a person to register as a sex offender who has been or is required to register under federal law. "SORNA imposes an independent, federally mandated registration requirement" pursuant to MO-SORA section 589.400.1(7) "based on the person's *present* status as a sex offender who 'has been' required to register pursuant to SORNA." *Doe v. Toelke*, 389 S.W.3d 165, 167

13

(Mo. banc 2012) (emphasis added).  This Court recently held section 589.400.1(7) continues to impose a lifetime registration requirement for an offender who has been or is required to register under federal law after the 2018 amendments took effect despite adoption of a tier system and registration removal procedure.  *Smith v. St. Louis Cnty. Police*, 659 S.W.3d 895, 903 (Mo. banc 2023).  Unlike the offenders in *Smith*, MacColl does not concede she was required to register under federal law because she believes any duty to register based on her 1995 misdemeanor offense expired before SORNA took effect.

When analyzing an offender's obligation to register if the underlying offense was not a registerable offense under MO-SORA or SORNA at the time of adjudication, Missouri courts begin their analysis by determining the tier under which the offender's offense would be classified under SORNA and calculate the corresponding registration period to determine if the offender is one who has been required to register under federal law pursuant to section 589.400.1(7).  For example, in *Horton*, the offender pleaded guilty in January 1996 to a class A misdemeanor of second-degree sexual abuse, which rendered him a tier I sex offender under SORNA.  *Horton*, 462 S.W.3d at 772.  In 2013, the offender filed a petition to remove his name from the registry but offered no evidence at the hearing other than asking the circuit court to take judicial notice of federal and state statutes.  *Id*.  The circuit court denied his removal petition.  *Id*.  In affirming the circuit court's judgment, the Southern District recognized the offender did not have an obligation to register under MO-SORA based solely on his 1996 guilty plea because that offense was not registerable at the time.  *Id*. at 772-73.  When analyzing whether the

14

offender had to register pursuant to section 589.400.1(7), the Southern District found that, as a tier I offender under SORNA, the offender was required to register for fifteen years unless he was allowed a reduction under the clean record provision. *Id*. at 773. Because the record did not contain any evidence the offender "ever sought or was 'allowed' a reduction," the offender was required to register from August 2008 when SORNA became effective until January 2011, when the fifteen-year registration period expired after his January 1996 adjudication. *Id*. Hence, the offender was required to register pursuant to section 589.400.1(7) as a person who has been required to register under federal law. *Id*.

In *Petrovick*, the offender pleaded guilty to felony first-degree sexual assault in November 1991. *Petrovick*, 537 S.W.3d at 389. In 2016, the offender subsequently sought, and received, a declaration he was not required to register under Missouri law because he was never required to register under SORNA. *Id*. On appeal, the parties agreed the offender was a tier I offender under SORNA, which would require registration for fifteen years "[u]nless otherwise excused." *Id*. at 391. The state argued, because SORNA was enacted in July 2006 and the offender's fifteen-year registration period would not expire until November 2006, he was an offender who has been required to register under federal law pursuant to section 589.400.1(7). *Id*. The Western District rejected this argument because SORNA did not become effective immediately upon enactment and the earliest it could have been effective was after November 2006. *Id*. at 392. Therefore, the offender was not an offender who had been required to register under SORNA and was not required to register pursuant to section 589.400.1(7). *Id*.

15

In *Carr v. Missouri Attorney General Office*, 560 S.W.3d 61 (Mo. App. W.D. 2018), the offender pleaded guilty in 1980 to sexual assault for engaging in sexual intercourse with a fourteen-year-old when he was seventeen.  The offender sought to be removed from the registry in 2016, which the circuit court denied.  *Id.* at 63.  In reversing the circuit court's judgment, the Western District determined the offender was either a tier I or tier II offender, not a tier III offender as the circuit court found.  *Id*. at 65.  When considering the date of the offender's 1980 guilty plea together with his classification as either a tier I or tier II offender, the offender fell "outside the statutory periods during which he would have been required to register under either state or federal law."  *Id*. at 65-66.  The Western District then resolved whether the offender ever was required to register pursuant to section 589.400.1(7) by analyzing the registration periods for tier I and tier II offenders under SORNA.  *Id*. at 66-67.  Assuming the offender was a tier II offender with a twenty-five-year registration period, his registration period expired in 2005, which was before he was subjected to SORNA's federal registration requirements. *Id*. at 66-67.  Accordingly, the offender's present status was not as an offender who has been required to register under federal law.  *Id*.

When applying the analysis from *Horton*, *Petrovick*, and *Carr*, this Court begins its inquiry by determining MacColl's tier status under SORNA, which is a prerequisite to determining if and how the clean record provisions apply.  The parties and dissenting

opinion agree MacColl is a tier I offender under SORNA.[7] As a tier I offender under SORNA, MacColl's full registration period would have been fifteen years from her 1995 guilty plea; hence, she would have been required to register from 2008 when SORNA required her to register until 2010 when the fifteen-year-period would have expired. MacColl argues, however, she was never required to register under SORNA because she believes she was entitled to the five-year clean record reduction under 34 U.S.C. § 20915(b)(1)(A)-(D), which would have her registration period end in 2005 before SORNA was enacted.

The parties disagree about how a tier I offender receives a clean record reduction. MacColl maintains she was entitled to a reduction as a matter of fact in August 2005 when she met the clean record requirements. Respondents disagree, arguing MacColl should have sought a declaratory judgment or other judicial relief before or at the time SORNA became effective. Respondents contend, because MacColl did not seek a declaratory judgment at that time, the registration requirement took effect and rendered her a person who has been or is required to register under federal law pursuant to section 589.400.1(7). MacColl responds, because SORNA does not require the consent of any court or other tribunal prior to the benefit of the reduction becoming applicable, her failure to seek relief sooner is irrelevant. Respondents concede there is no caselaw to

---

[7] The parties litigated under the premise MacColl was a tier I offender under SORNA in their circuit court pleadings and in their appellate briefs at the Western District. The record reflects both the circuit court and Western District premised their holdings on MacColl's status as a tier I offender under SORNA when analyzing whether she was required to register under federal law.

17

support their position—nor does the dissenting opinion cite any case—as to when MacColl was required to seek the clean record reduction because this is a case of first impression.

SORNA provides, "A sex offender shall keep the registration current for the full registration period … unless the offender is allowed a reduction under subsection (b)." 34 U.S.C. § 20915(a). Section 20915(b) sets forth circumstances for a reduced registration period. MacColl points out the statute does not delineate a mechanism for an offender to seek an allowance, indicate from whom the allowance should be sought, or provide a deadline or statute of limitations by which to obtain relief. MacColl believes her case is akin to *Carr* and *Petrovick*, both of which found the offenders' registration periods expired prior to SORNA's enactment even though the offenders did not seek declaratory relief at the time SORNA became effective. *Carr*, 560 S.W.3d at 63 (involving an offender who sought relief in 2016 from a 1980 conviction); *Petrovick*, 537 S.W.3d at 389 (involving an offender who sought relief in 2016 from a 1991 conviction). MacColl believes *Carr* and *Petrovick* stand for the proposition that, once she met the clean record requirements, she automatically was entitled to the five-year reduction in her registration period. This Court finds *Carr* and *Petrovick* do support MacColl's position that an offender may seek a declaration of her rights regarding the clean record provision after SORNA became effective. Although the evidence to demonstrate compliance with the clean record provision may be fresher closer in time to

18

the potential reduction date, the statute's plain language does not indicate a timeline within which an offender may seek relief.[8]

This Court disagrees MacColl is entitled to an automatic reduction as a matter of fact or law. SORNA's plain language and the only reported case to apply the clean record provision, *United States v. Templin*, 354 F. Supp. 3d 1181 (Mont. Dist. 2019),[9] demonstrate the clean record provision does not apply automatically. In *Templin*, the district court sustained an offender's motion to reduce his registration period by five years after he demonstrated he met the clean record requirements of 34 U.S.C. § 20915(b) by analyzing his motion, a probation office report, the offender's testimony at an evidentiary hearing, and supplemental records demonstrating he completed sex offender treatment. *Id.* at 1183. Hence, when applying *Templin* and § 20915(b)'s plain language mandating a sex offender must register for the entire registration period unless the offender is *allowed* a reduction, this Court finds the clean record provision does not apply automatically as MacColl maintains. An offender seeking a reduction from the

---

[8] The dissenting opinion asserts there is no binding or persuasive authority permitting retroactive application of the clean record provision, which is correct in that this is an issue of first impression. But the dissenting opinion also offers no binding or persuasive authority that applying the clean record provision is any different from applying other SORNA provisions to determine an offender's registration obligation, even when that obligation has long expired before an offender sought relief, as in *Petrovick* and *Carr*.

[9] Although neither precedential or persuasive, this Court merely notes federal district courts in three recent unreported cases also analyzed whether offender motions invoking the clean record provision to reduce their registration period applied. *See United States v. Stovall*, No. 06-CR-00286-REB, 2021 WL 5086067, at *2 (D. Colo. Nov. 2, 2021); *United States v. Davenport*, No. CR 06-06-M-DWM, 2022 WL 4547652, at *1 (D. Mont. Sep. 29, 2022); *United States v. Kite*, No. 5:05-CR-00022, 2023 WL 1956687, at *1 (W.D. Va. Jan. 13, 2023).

full, mandated registration period must be *allowed* to do so by a court or other tribunal because whether an offender has complied with the clean record requirements is a factual inquiry, as the parties litigated in their competing motions for summary judgment. *Horton*, however, does not control the outcome as the dissenting opinion asserts, because the offender in that case failed to offer any evidence whatsoever to support his assertion he was entitled to a clean record reduction beyond the conclusory statements in his one-page petition. *Horton*, 462 S.W.3d at 771. Here, as discussed below, MacColl offered exhibits and affidavits to support her claim.

Under SORNA, tier I offenders may have their full fifteen-year registration period reduced by five years if they maintain a clean record by meeting four requirements:

> (A) not being convicted of any offense for which imprisonment for more than 1 year may be imposed; (B) not being convicted of any sex offense; (C) successfully completing any periods of supervised release, probation, and parole; and (D) successfully completing of [sic] an appropriate sex offender treatment program certified by a jurisdiction or by the Attorney General.

34 U.S.C. § 20915(b)(1)(A)-(D).[10]

The parties do not dispute MacColl met three of the four requirements in that, during the ten-year period after she pleaded guilty in 1995, she had not been convicted of any offense for which imprisonment for one year may be imposed, she had not been convicted of any sex offense, and she successfully completed probation. MacColl

---

[10] MO-SORA tier I offenders, like SORNA tier I offenders, must maintain their registration for fifteen years. Section 589.400.4(1). MO-SORA tier I offenders may also seek a five-year reduction of that registration period, section 589.400.5(3)(a), if they maintain a clean record for ten years by demonstrating the same requirements as SORNA pursuant to section 589.400.5(1)(a)-(d).

maintains she also met the fourth requirement by successfully completing an appropriate sex offender treatment program certified by a jurisdiction or by the attorney general. MacColl reasons the circuit court mandated she attend specified treatment programs as a term of her probation, thereby demonstrating it was certified by the court. Moreover, MacColl contends the circuit court would not have released her from probation at the end of the two-year period had she not completed the treatment program successfully. Respondents disagree, arguing the record does not reflect whether her group and individual treatment programs were "certified by a jurisdiction or the Attorney General" and MacColl bears the burden of demonstrating its certification.

The summary judgment record reflects Respondents disputed whether the sex offender treatment program and individual counseling the circuit court ordered MacColl to complete qualified as a certified program because the circuit court's judgment did not name a specific program. Respondents maintained additional discovery was required to determine what program MacColl participated in and whether the program was completed or if she merely participated in counseling until her probationary period expired. To that end, Respondents filed a motion for a continuance to conduct additional discovery so MacColl could provide details of the program, such as the dates attended, the name of the program coordinator, the treatment provider, and other details to allow Respondents to examine the veracity of MacColl's claim.

In reply, MacColl provided two letters—one from the group counseling provider and one from the individual counselor—outlining the counseling and treatment she underwent from 1995 to 1997 and stating she completed the treatment program as

21

directed. MacColl also averred she attempted to obtain her counseling session records from the department of mental health but was advised either the Boone County Sheriff or the Boone County circuit court would have to request those records instead.

Section 589.401.9 authorizes the prosecuting attorney in the circuit court in which an offender files a removal petition to "have access to all applicable records concerning the [offender] including, but not limited to, criminal history records, mental health records, juvenile records, and records of the department of corrections or probation and parole." These records are vital to determining whether the circuit court's ordered sex offender treatment program qualifies as "an appropriate sex offender treatment program certified by a jurisdiction or by the Attorney General" and whether MacColl successfully completed such program. In the absence of these records, which only the prosecuting attorney statutorily may obtain under MO-SORA, this Court finds a genuine issue of material fact remains regarding whether MacColl has met the criteria of the clean record provision regarding completion of "an appropriate sex offender treatment program certified by a jurisdiction or by the Attorney General." Once those records are produced and examined, the circuit court can assess whether MacColl met the clean record criteria entitling her to a reduction in her registration period, which, in turn, would allow the circuit court to resolve whether MacColl ever was subject to registration under SORNA such that she would be required to register pursuant to section 589.400.1(7).

**Conclusion**

The circuit court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
GEORGE W. DRAPER III, Judge


Wilson, C.J., Russell and Breckenridge, JJ., concur;
Fischer, J. dissents in separate opinion filed;
Powell and Ransom, JJ., concur in opinion of Fischer, J.

23



# SUPREME COURT OF MISSOURI
## en banc

LIANA MACCOLL (FORMERLY    )
KNOWN AS LIANA M. BRADFORD),  )
                                      )
           Appellant,         )
                                      )
v.                                )     No. SC99656
                                      )
MISSOURI STATE HIGHWAY PATROL  )
AND BOONE COUNTY, MISSOURI,   )
SHERIFF,                        )
                                      )
           Respondents.   )

## DISSENTING OPINION

I respectfully dissent. I would affirm the circuit court's judgment because Liana MacColl was not allowed a reduction of her federal registration requirement, pursuant to the Sex Offender Registration and Notification Act, 34 U.S.C. §§ 20901, *et seq.* ("SORNA"), before that registration requirement began in 2008. Therefore, MacColl is an individual who "has been" required to register under federal law and is required to register for her lifetime pursuant to MO-SORA. § 589.400.1(7);[1] *Smith v. St. Louis Cnty. Police*, 659 S.W.3d 895, 903 (Mo. banc 2023).

---

[1] All statutory references are to RSMo Supp. 2018, unless otherwise indicated.

"SORNA imposes an independent obligation requiring respondents to register as sex offenders in Missouri." *Doe v. Keathley*, 290 S.W.3d 719, 720 (Mo. banc 2009); *Doe v. Toelke*, 389 S.W.3d 165, 167 (Mo. banc 2012). "In 2008, SORNA was applied to all sex offenders, including individuals who committed a sex offense prior to July 20, 2006." *Smith*, 659 S.W.3d at 900 (citing *Keathley*, 290 S.W.3d at 720). "Although the precise date of when SORNA took effect is uncertain, Missouri courts have recognized SORNA did not apply to offenders who have pleaded guilty before its enactment likely until August 2008." *Slip Op.* at 7; *see Horton v. State*, 462 S.W.3d 770, 773 (Mo. App. 2015).

Tier I offenders are required to register pursuant to SORNA for 15 years. 34 U.S.C. § 20915(a)(1). Pursuant to SORNA, tier I offenders may have their 15-year registration period reduced by five years if they maintain a clean record by meeting four specific requirements. *Id.* § 20915(b)(1)(A)-(D); *see Slip Op.* at 7. As correctly noted by the principal opinion, however, this reduction of the registration period is not automatic because "[a]n offender seeking a reduction from the full, mandated registration period must be *allowed* to do so by a court or other tribunal because whether an offender has complied with the clean record requirements is a factual inquiry, as the parties litigated in their competing motions for summary judgment." *Slip Op.* at 19-20 (emphasis in original).

This Court has recently held § 589.400.1(7) "mandat[es] a lifetime registration requirement in Missouri if an offender 'has been' subject to federal registration requirements under SORNA." *Smith*, 659 S.W.3d at 903; *see Slip Op.* at 14. "The registration requirement pursuant to § 589.400.1(7) continues even after the individual's federal registration obligation pursuant to SORNA has expired because 'the state

2

registration requirement is based on the person's present status as a sex offender who "has been" required to register pursuant to SORNA.'" *Smith*, 659 S.W.3d at 901 (quoting *Toelke*, 389 S.W.3d at 167).

MacColl is a tier I offender pursuant to SORNA. *Slip Op.* at 17. Therefore, as correctly concluded by the principal opinion, MacColl's full registration requirement pursuant to SORNA "would have been fifteen years from her 1995 guilty plea; hence, she would have been required to register from 2008 when SORNA required her to register until 2010 when the fifteen-year-period would have expired." *Slip Op.* at 17. MacColl did not seek declaratory relief regarding whether she has a prior or current obligation to register pursuant to SORNA until October 2020. Therefore, inasmuch as MacColl "has been" required to register under federal law, MacColl is now required to register in Missouri, pursuant to MO-SORA.

As the principal opinion recognizes, in *Horton*, the court of appeals reached this exact conclusion. *Slip Op.* at 14-15. The *Horton* court correctly anticipated this Court would construe § 589.400.1(7) to mandate a lifetime registration requirement in Missouri for offenders who have been required to register under federal law. *Smith*, 659 S.W.3d at 903. In light of this Court's holding in *Smith* and the concession that a reduction pursuant to the clean record provision is not automatic, there is no reason for MacColl's case to have a different outcome.

In *Horton*, Horton entered an *Alford* plea of guilty to the class A misdemeanor of sexual abuse in the second degree in 1996, rendering him a tier I sex offender pursuant to SORNA. 462 S.W.3d at 772. In 2013, Horton filed a petition to remove his name from

3

the registry, alleging he had duly registered and no longer had a duty to register pursuant to SORNA. *Id.* "No evidence was tendered or admitted at the hearing, and the trial court's only substantive action at the hearing was to take judicial notice of state and federal statutes." *Id.* The circuit court thereafter denied Horton's petition for removal. *Id.* The court of appeals affirmed the circuit court. *Id.* at 775. The court of appeals noted, "[a]s a tier I sex offender under SORNA, [Horton] was required to keep his registration current for fifteen years unless allowed a reduction." *Id.* at 773 (internal alteration and quotations omitted). Because Horton, similar to MacColl, did not seek or was not "allowed" a reduction, the offender was required to register pursuant to SORNA until his 15-year registration period expired. *Id.* Therefore, Horton was "required to register under [MO-]SORA because he 'has been' required to register under federal law (i.e., SORNA)[.]" *Id.* at 774. The court of appeals holding in *Horton* follows this Court's recent holding in *Smith*, which also applies to MacColl. *Smith*, 659 S.W.3d at 903.

Neither *Petrovick v. State*, 537 S.W.3d 388 (Mo. App. 2018), nor *Carr v. Missouri Attorney General Office*, 560 S.W.3d 61 (Mo. App. 2018), relied on by the principal opinion, addressed SORNA's clean records provision.[2] Both *Petrovick* and *Carr* decided

---

[2] The principal opinion is correct that, in both *Petrovick* and *Carr*, the court of appeals examined and determined an offender's registration obligation, even when the offender sought relief after that obligation had long expired. *Slip Op.* at 19, n.8. Due to the timing of each offender's guilty plea, however, neither Petrovick nor Carr had any federal registration obligation and neither Petrovick nor Carr sought a retroactive reduction in the registration obligation. The only SORNA provisions the *Petrovick* and *Carr* courts applied to determine neither offender was ever subject to a SORNA registration obligation was the offender's full registration period of 15 or 25 years. *Petrovick*, 537 S.W.3d at 391-92 (applying 34 U.S.C. § 20915(a)(1)); *Carr*, 560 S.W.3d at 66-67 (applying 34 U.S.C. § 20915(a)(1)-(2)).

4

the offenders were allowed removal from the registry based on the entirety of their 15-year or 25-year sentences, notwithstanding any clean record reduction. 537 S.W.3d at 392; 560 S.W.3d at 67. These cases, therefore, are distinguishable from MacColl's case.

The principal opinion identifies one federal district court case addressing SORNA's clean record provision.[3] *United States v. Templin*, 354 F. Supp. 3d 1181 (Mont. Dist. 2019). In *Templin*, after the offender became eligible for the clean records reduction, the offender sought a reduction from the district court, and the district court determined the

---

In *Petrovick*, an offender sought removal from the registry after pleading guilty to first-degree sexual assault in 1991. 537 S.W.3d at 389. The circuit court ordered the offender be removed, and the court of appeals affirmed. *Id.* at 393. The parties agreed the offender was a tier I offender, subject to a registration requirement of 15 years. *Id.* at 391. Therefore, the offender's 15-year registration term continued until November 2006. *Id.* The court of appeals determined that the earliest SORNA became effective was beyond November 2006, when the attorney general promulgated an interim rule. *Id.* "No matter which version of the federal rule triggered the application of SORNA to pre-enactment offenders, Petrovick's 15-year term expired before he was ever subject to a federal registration obligation." *Id.* at 392.

In *Carr*, the offender sought removal from the registry after pleading guilty to sexual assault in 1980. 560 S.W.3d at 63. The State filed a motion to dismiss, which the circuit court sustained. *Id.* The court of appeals reversed and remanded with instructions to remove the offender's name from the registry. *Id.* at 67. The court of appeals determined the offender must be either a tier I or tier II offender, subjecting him to either a 15-year or 25-year registration period, respectively. *Id.* at 65-66. Therefore, the offender was outside of the statutory period during which he would have been required to register pursuant to MO-SORA and SORNA because, at most, his 25-year registration period expired in July 2005, before SORNA was enacted in 2006. *Id.* "[A]ssuming, *arguendo*, [the offender] is a tier II offender, his twenty-five-year registration period expired (at the latest) approximately two years before he was ever subject to SORNA's federal registration obligation." *Id.* at 67.

In fact, both *Petrovick* and *Carr* courts concluded, in line with this Court's recent decision in *Smith*, that if the offender "was *ever* subject to an obligation to register under SORNA, this would trigger his obligation to register under the state [MO-]SORA statute." *Petrovick*, 537 S.W.3d at 391; *see also Carr*, 560 S.W.3d at 66. As the principal opinion notes, in this case, MacColl was subject to SORNA at least from 2008 until 2010. *Slip Op.* at 17.

[3] The principal opinion also identifies three unreported cases addressing SORNA's clean record provision. The citation to such unreported cases, however, is neither precedential nor persuasive and most would consider inappropriate.

offender had met the requirements for such reduction. *Slip Op.* at 19; *Templin*, 354 F. Supp. 3d at 1182-83. In *Templin*, the district court made a conclusion as to the offender's federal registration obligation, but not as to each offender's respective state registration obligations. 354 F. Supp. 3d at 1184.

*Templin* supports the conclusion that offenders may seek declaratory judgment regarding their federal registration requirement after becoming eligible for a reduction in their federal registration obligation, but that a reduction pursuant to the clean record provision is not automatic. *Templin* does not support the conclusion that the court may eliminate previous SORNA registration requirements. The principal opinion identifies no binding or persuasive authority that the circuit court may retroactively apply the clean record provision to eliminate MacColl's registration period from August 2008 to 2010.

This Court should follow its decision in *Smith* and the court of appeals' decision in *Horton* and conclude MacColl is required to register in Missouri, pursuant to § 589.400.1(7). Because MacColl was not allowed a reduction in her federal registration requirement prior to the commencement of that registration requirement in 2008, she is an offender who "has been" required to register under federal law and, therefore, is subject to the lifetime registration requirement of § 589.400.1(7) under MO-SORA. *Smith*, 659 S.W.3d at 903.

_____
Zel M. Fischer, Judge

6